## KIHLBERG *v.* UNITED STATES.

A contract between the United States and A., for the transportation by him of stores between certain points, provided that the distance should be "ascertained and fixed by the chief quartermaster," and that A. should be paid for the full quantity of stores delivered by him. Annexed to the contract, and signed by the parties, was a tabular statement fixing the sum to be paid for each one hundred pounds of stores transported. The distance, as ascertained and fixed by the chief quartermaster, was less than by air line, or by the usual and customary route. *Held,* 1. That his action is, in the absence of fraud, or such *gross mistake as would necessarily imply bad faith,* or a failure to exercise an honest judgment, conclusive upon the parties. 2. That A. was not entitled to compensation, according to the number of pounds received for transportation, in all cases where the loss in weight, occurring during transportation, was without neglect upon his part, but only for the number of pounds actually delivered by him.

APPEAL from the Court of Claims.

This is an appeal by Kihlberg from the judgment of the Court of Claims, in a suit upon a contract made Jan. 31, 1870, between the United States and him, for his transportation of military, Indian, and government stores and supplies from points on the Kansas Pacific Railway to posts, depots, and stations in portions of Kansas, Colorado, Texas, Indian Territory, and New Mexico, and to such other depots as might thereafter be designated within the States and Territories named.

The following are portions of the contract the construction of which is involved in this suit : —

"ART: 2. That the said Kihlberg agrees and binds himself . . . to transport, under this agreement, from and to the posts, depots, or stations named in art. 1, or from and to any other posts, depots, or stations that may be established within the district described in said article, any number of pounds of military, Indian, and government stores and supplies, from and between one hundred thousand pounds and ten millions of pounds in the aggregate.

. . . . . . . . . . . . .

"ART. 5. The military, Indian, and government stores and supplies which shall be transported under this agreement shall be consigned to their respective destinations, and receipts on bills of lading shall be given by the officer of the quartermaster's department serving at the place of consignment, for the full quantity of stores that shall

be delivered, and upon such receipts payments shall be made to the said Kihlberg, as hereinafter provided.

.     .     .     .     .     .     .     .     .     .     .     .

" ART. 7. . . . Upon the arrival of the train at the place of destination or delivery, the officer of the quartermaster's department at the point of delivery shall indorse the bill of lading in accordance with the finding of a board of survey, as hereinafter provided, stating the quality and condition of the stores delivered, upon which indorsement payment shall be made as per contract, deducting the amount of any payment or payments previously made, and also for any articles missing, lost, destroyed, or damaged, and which the board of survey may find to be properly chargeable to the contractor, at the rate specified in art. 8 of this agreement.

" ART. 8. In all cases when stores have been transported by the said Kihlberg under this agreement, a board of survey, to be applied for in writing by the contractor or his agent (one member of which board shall be, if practicable, an officer on duty in the subsistence department), shall be called without delay, on their arrival at the point of destination or delivery, to examine the quantity and condition of the stores transported, and in cases of loss, deficiency, or damage, to investigate the facts and report the apparent causes, assess the amount of loss, deficiency, or damage, and state whether it was attributable to neglect or want of proper care on the part of the contractor or to causes beyond his control, and these proceedings, a copy of which shall be furnished to the contractor, shall be attached to the bill of lading, and shall govern the payments to be made on it.

" For loss of weight, due to shrinkage, and for leakage of vinegar, molasses, or other liquids, the contractor shall not be held liable if the packages are delivered in good order and condition, and the board of survey shall be satisfied that such shrinkage or leakage did not arise from neglect or want of care on the part of the contractor or his agent. For loss, deficiency, or damage, attributable to the contractor, he shall pay double the cost at the point where he receives the articles, which cost shall be determined by taking the cost price at place of purchase and adding thereto the cost of transportation to the point where the stores were turned over to the contractor; and no freight whatever shall be paid on stores deficient. In case of damage, freight shall be deducted in proportion to the quantity damaged. Should no board of survey be called when requested by the contractor, through failure on the part of the quartermaster's department or other military authority to have one convened, it shall be considered that the contractor has delivered

all the stores as specified in the bill of lading in good order and condition, and he shall be paid accordingly. But before such payment is made, the fact must be shown that the contractor or his agent did make application in writing to the quartermaster for a board of survey. If the amount of loss, deficiency, or damage exceeds the value of the bill of lading, it shall be deducted from any after payment that may become due.

" Transportation to be paid in all cases according to the distance from the place of departure to that of delivery, the distance to be ascertained and fixed by the chief quartermaster of the district of New Mexico, and in no case to exceed the distance by the usual and customary route. Where, however, stores are taken from trains before reaching their destination by competent military authority, the contractor will be allowed an increase of pay of five per cent on contract rates to points of actual delivery; *Provided*, that in no case more than the regular rates for the whole distance are paid.

. . . . . . . . . . . .

" ART. 17. For and in consideration of the faithful performance of the stipulations of this agreement, the said Kihlberg shall be paid at the office of the depot quartermaster at Fort Leavenworth, Kansas, in the legal currency of the United States, according to the distance supplies are transported, and agreeably to the rates specified in the tabular statement hereunto annexed, signed by the parties to this agreement."

General Easton, on the 16th of June, 1870, issued an order addressed to the depot quartermaster at Fort Leavenworth, Kansas, stating the distances by which he was to be governed in making settlements under the contract. The distances thus given were less than by air line, or by the usual and customary route.

There was a further contention in the case as to whether the contractor was entitled, under the contract, to compensation according to the weight of the supplies when received for transportation, or their weight when delivered.

The Court of Claims held that the contractor was bound by the distances named by the chief quartermaster, and was not entitled to compensation except upon the basis of the number of pounds actually delivered.

*Mr. Harvey Spalding* for the appellant.

*The Solicitor-General, contra.*

MR. JUSTICE HARLAN delivered the opinion of the court.

The contract which is the foundation of this action provides that transportation shall be paid " in all cases according to the distance from the place of departure to that of delivery." But no specific rule is prescribed for the ascertainment of distances. The contract is silent as to whether they shall be estimated by an air line, or by the route usually travelled by contractors in conveying government stores, or by the road over which troops ordinarily marched when going from one post or station to another. The parties, however, concurred in designating a particular person — the chief quartermaster of the district of New Mexico — with power not simply to ascertain, but to fix, the distances which should govern in the settlement of the contractor's accounts for transportation. The written order of General Easton to the depot quartermaster at Fort Leavenworth was an exertion of that power. He discharged a duty imposed upon him by the mutual assent of the parties. The terms by which the power was conferred and the duty imposed are clear and precise, leaving no room for doubt as to the intention of the contracting parties. They seem to be susceptible of no other interpretation than that the action of the chief quartermaster, in the matter of distances, was intended to be conclusive. There is neither allegation nor proof of fraud or bad faith upon his part. The difference between his estimate of distances and the distances by air line, or by the road usually travelled, is not so material as to justify the inference that he did not exercise the authority given him with an honest purpose to carry out the real intention of the parties, as collected from their agreement. His action cannot, therefore, be subjected to the revisory power of the courts without doing violence to the plain words of the contract. Indeed, it is not at all certain that the government would have given its assent to any contract which did not confer upon one of its officers the authority in question. If the contract had not provided distinctly, and in advance of any services performed under it, for the ascertainment of distances upon which transportation was to be paid, disputes might have constantly arisen between the contractor and the government, resulting in vexatious and expensive and, to the contractor oftentimes, ruinous litigation.

Hence the provision we have been considering. Be this supposition as it may, it is sufficient that the parties expressly agreed that distances should be ascertained and fixed by the chief quartermaster, and in the absence of fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment, his action in the premises is conclusive upon the appellant as well as upon the government. The contract being free from ambiguity, no exposition is allowable contrary to the express words of the instrument.

The tabular statement of rates appended to the contract, and attested by the signatures of the parties, shows that the appellant was to be paid for the transportation of supplies by the pound. The appellant claims that he was entitled to compensation according to the number of pounds received for transportation, in all cases where the loss in weight, occurring during transportation, was without neglect upon his part. The government contends that the quantity delivered determined the amount of compensation. We are of opinion that the latter is the better construction of the contract. By the fifth article of the agreement, it is made the duty of the quartermaster, at the place of delivery, to give to the contractor receipts on the bill of lading "for the full quantity of stores that shall be delivered, and, upon such receipts, payment shall be made." By the eighth article, provision is made for a board of survey, if requested by the contractor, "to examine the quantity and condition of stores transported, and in cases of loss, deficiency, or damage, to investigate the facts, report the apparent causes, assess the amount of loss, deficiency, or damage, and state whether it was attributable to neglect or want of proper care on the part of the contractor, or to causes beyond his control; and these proceedings, a copy of which shall be furnished to the contractor, shall be attached to the bill of lading, and shall govern the payments to be made on it." The previous article makes it the duty of the quartermaster at the point of delivery to "indorse the bill of lading, in accordance with the finding of a board of survey, . . . stating the quantity and condition of stores delivered; upon which indorsement payment shall be made as per contract," deducting the value of articles missing, lost, destroyed, or damaged, by neglect of the

contractor, if the board of survey has found that there was such neglect.    The contract further exempts the appellant from responsibility for loss of weight due to shrinkage, and for leakage of liquids, where the same has not occurred from his neglect.   These provisions, taken together, show that while the contractor is not to be charged for the value of any loss, deficiency, or damage which, without his fault, occurred during transportation, the government agreed to pay him transportation at a fixed rate per pound, according to the weight of supplies when delivered at the place of destination.   There are other portions of the contract, not referred to in the briefs of counsel, which seem to fortify this conclusion.   In the eighth article, after providing that the contractor shall pay double the cost at the point of departure of articles in reference to which there was "a loss, deficiency, or damage," attributable to him, the contract declares: "and no freight whatever shall be paid on stores deficient."   If in the progress of transportation the stores were reduced in weight, by reason of shrinkage or leakage, there would seem to be a deficiency in stores, within the meaning of the contract, for which deficiency no freight could be charged.   The contractor took care to guard against responsibility for loss of weight, arising from causes beyond his control, but failed to stipulate for payment of transportation beyond the quantity or weight of supplies at the place of destination. The language employed indicates an understanding between the parties that the payment of transportation was to be regulated by the weight actually delivered, not by the weight received for delivery.

The views expressed lead to an affirmance of the judgment; and it is

*So ordered.*