## BREYMAN et al. v. ANN ARBOR R. CO.

(Circuit Court, N. D. Ohio, W. D. June 25, 1897.)

1. CONSTRUCTION OF CONTRACT—PRINTED FORMS—REPUGNANT PROVISIONS.

In a contract for a railroad fill, made out on a printed form of construction contract used generally by the railroad company, where the material is to be taken from known and prescribed distances, between named streets in a city, close to the place to be filled, and there is a written stipulation for a fixed price per square yard of earth, a further printed clause, allowing extra compensation for hauls in excess of 600 feet, may be rejected as repugnant, and as having been left in by oversight, where other written provisions seem to make it inapplicable, and the parties, during the progress of the work, have ignored it.

2. SAME.

Under a filling contract which provides that all work done during each month shall be certified to by the railroad company's general manager as being in accordance with the contract, payment thereupon to be made for the same, less 10 per cent., to be reserved until final completion of the work, the monthly certificates of the general manager are to be taken as correct and conclusive (in the absence of any charge of fraud, collusion, bad faith, mistake, or gross negligence), so as to preclude the contractor, after entirely ceasing work, from asserting for the first time a claim for extra compensation for alleged overhauls of material.

This was an action at law by Charles H. Breyman and George W. Tonson, contractors under the firm name of C. H. Breyman & Co. against the Ann Arbor Railroad Company, to recover money alleged to be due for work done under a contract for the construction of a fill.

The contract under which the work was done contained the following provisions, among others:

"First. The contractors agree that they will construct, build, and in every respect complete all the grading and other work required to fill the low lands lying between Lagrange and Cherry streets and the east line of Seneca street and a line drawn parallel to and one hundred (100) feet easterly therefrom, and any other embankments or fills which the first party may desire made between Magnolia and Cherry streets in the city of Toledo, Ohio; that they will take the material necessary for this work from any point which the engineer in charge may designate, between Manhattan road and Lagrange street, on or adjacent to the line of the railroad of the party of the first part: and that all borrow pits so made shall be left in such condition as to surface as the engineer in charge may direct. It is understood that all material so handled in this district shall be put in place, as directed from time to time by the engineer in charge of the work, for and in consideration of fourteen (14) cents per cubic yard. The first party agrees on its part to furnish the necessary rails, fastenings, spikes, and ties, and put them on the ground adjacent to its roadbed near Elm street. First party also agrees to furnish, free of charge to the contractors, two engines, suitable for moving their dump cars; also fuel and supplies necessary to operate these locomotives, but not help. All work shall be done in strict accordance with the annexed specifications, which are signed by the parties hereto, and are made a part of this agreement, and are hereby declared and accepted as an essential part of the same. All of the said work to be done under the direction and inspection of party of the first part's engineers appointed to superintend the same, and to the full satisfaction and acceptance of party of the first part's general manager."

Said contract further provided as follows:

"The party of the first part, for and in consideration of the true and faithful performance of the covenants and agreements made by the contractor,

hereby covenants and agrees to pay or cause to be paid to the contractor, executors, or administrators, the rates and prices hereinafter named, to wit:

"First. For clearing...................... $......c.. per acre.
    "    grubbing .................... $......c..    "       "
    "    solid rock excavation.......... $......c..    "       "
    "    loose  "      "     .......... $......c..    "       "
    "    hard pan     "     .......... $......c..    "       "
    "    earth        "     .......... $......c14    "   cubic yard:

"Second. And the party of the first part agrees to pay the contractor at the rates aforesaid monthly, on or about the fifteenth (15th) day of each month, for all work done up to and including the last day of the preceding month, certified to by the party of the first part's general manager to be in accordance with this contract, less ten per centum of such amount, which percentage shall be withheld by the party of the first part until the final completion and acceptance of the work under the terms and agreements of this contract, when the percentage so retained, together with the balance due on the final estimate, shall be paid by the party of the first part, upon the certificate of the party of the first part's general manager that the whole work provided for in this contract is completed and acceptably finished within the time specified."

Said contract was typewritten, with blanks for insertion of prices and pronouns referring to contractors, except that (1) blanks were filled with writing: (2) certain corrections were made in writing; (3) the words "chief engineer" were stricken out, and the words "general manager" inserted; and (4) in paragraph II., clause first, all the words from "clearing" to "hard pan" were stricken out with pen and ink.

In and by said specifications it was provided as follows:

"Haul to be made six hundred (600) feet without extra pay, and one (1) cent per cubic yard to be paid for each 100 feet of haul thereafter."

The specifications so made part of and annexed to said contract were printed matter, except that the word "None" was written with ink under the word "Classification" on the margin, and the paragraph opposite such word "Classification" was stricken out with pen and ink.

After setting out the contract, the plaintiffs, in their petition, made the following allegations:

"Under and in pursuance of said contract, plaintiffs did grading and other work required to fill the lands specified in said contract, in pursuance of the terms thereof, and in accordance with the instructions and directions of the engineer of said railroad company in charge of said work, to the amount of fifty-seven thousand three hundred and seven and $62/100$ (57,307.62) cubic yards of earth excavation, the contract price for which, at fourteen (14) cents per cubic yard, amounted to eight thousand and twenty-three and $7/100$ dollars ($8,023.07). Of the earth work so done fifty-five thousand and sixty-six and $47/100$ (55,066.47) cubic yards were hauled by plaintiffs more than six hundred (600) feet, and plaintiffs were entitled to receive therefor the sum of one cent (1) per cubic yard for each one hundred (100) feet of haul in excess of six hundred (600) feet. And plaintiffs say that the number of cubic yards so hauled, and the distance the same was hauled in excess of six hundred (600) feet, and the contract price thereof and therefor, is as follows:

| Number of Cubic Yards. | Overhaul. | Contract Price. |
|---|---|---|
| 4,387 | 600 ft. | $    263.22 |
| 32,525 | 2,100 " | 6,830.25 |
| 5,662.47 | 4,600 " | 2,604.73 |
| 6,380 | 8,150 " | 5,199.70 |
| 596 | 650 " | 38.74 |
| 885 | 1,350 " | 119.47 |
| 4,631 | 6,950 " | 3,218.54 |
| 55,066.47 | | $18,274.65 |

"The work so done as aforesaid was done and performed within the time required by said contract, and was accepted and approved by said defendant, its general manager, and engineer, and estimates of the number of cubic yards of earth excavation so made, and the grading and filling so done, were duly made by said defendant and delivered to plaintiffs. All said earth work was done, and said material taken, hauled, and deposited, within the district named in the first paragraph of said contract. On or about the 7th day of July, 1896, the said defendant directed plaintiffs to suspend the work under said contract, and on the following day defendant withdrew the locomotives theretofore furnished under said contract, and no other work was done by plaintiffs thereunder, although plaintiffs were ready and willing to do all work which had been or might be required of them under said contract, and so continued to hold themselves in readiness to do said work until the 13th day of July, 1896; but defendant thereafter required no further work to be done by said plaintiffs under said contract. By reason of the premises there became due to said plaintiffs, prior to said 13th day of July, 1896, under said contract, for the work so done and performed by them, the sum of twenty-six thousand two hundred and ninety-seven and $72/100$ dollars ($26,297.72). There has been paid by said defendant, for work so done under said contract, the sum of five thousand two hundred and ninety-two dollars ($5,292.00) and no more. There is due the plaintiffs from said defendant, by reason of the premises, the sum of twenty-one thousand and five dollars and seventy-two cents ($21,005.72) and interest thereon from July 13, 1896. Wherefore plaintiffs pray judgment against said defendant for said sum of twenty-one thousand and five dollars and seventy-two cents ($21,005.72) and interest thereon from July 13, 1896."

Brown & Geddes, for plaintiffs.
Alexander L. Smith and J. H. Doyle, for defendant.

HAMMOND, J. (after stating the facts). The motion in this case must be granted, to strike out so much of the plaintiffs' petition as avers an overhaul beyond 600 feet of 55,066 cubic yards, and claiming compensation therefor at 1 cent per cubic yard for each and every 100 feet in excess of the 600 feet. This demand is made because of a printed clause of the specifications allowing such compensation to contractors, which was not stricken out, or otherwise canceled or modified, by the contract made between these parties, as were other parts of the printed form in use by the railroad company and its contractors. Outside of this disputed clause of the contract, 14 cents per cubic yard were to be paid, and the amount due under the allowance is $8,023.07, of which $5,292 have been paid, leaving a balance of $2,731.07, also sued for by this petition, to which, however, is added the claim for $18,274.65 for the overhaul beyond the 600 feet, making a total demand of $21,005.72 and interest as yet due.

The right to the $18,274.65 for the overhaul depends on a proper construction of the contract, and this motion is in the nature of a demurrer to the petition, which denies any such liability under the contract that is pleaded. The printed form is that used by the railroad company on which to write its contracts with its contractors, and evidently intended to be adapted to each occasion on which it is used, according to its requirements. Possibly it is a fair inference, also, though it is not essential to determine this, that it is usually adapted to construction contracts that embrace longer distances than those involved in this contract to construct between the streets of a city or town, or within such a place, and its specifications would indicate

such uses for it. But, however this may be, this contract defines a space between two streets in Toledo, which are relatively not very far apart, and designates, also, another relatively close-by street as the outer boundary within which the material for the fills is to be taken. Now, this fact or this situation should not be overlooked in construing this contract, nor any inferences of intention fairly deducible from it. The petition does not set forth the distances between these boundary streets of the contracts, nor whether the overhauls sued for were from distances within the boundaries; but presumably they were, as there is no allegation of any modification or agreement to go beyond them. Therefore we assume that the overhauls are made of distances traversed within the territory during the process of excavation and filling up, but whether by continuous distance over 600 feet from the point of receiving the filling and the point of its delivery, or by aggregating the distances traversed in shifting about from one place to another, does not appear by anything in the petition, or inferentially, unless it may be by specific reference to distances to be implied from the names of the streets and their relation to each other as shown upon the plats of the city, as to which the court is not now advised. But it is sufficient for the present purpose that the contract relates to defined territory within the streets named in a city, and does not relate to country distances, within which material might have to be hauled for considerable stretches, as extraordinary conditions might sometimes demand, and to which conditions this printed overhaul clause, presumably, was intended to refer.

There can be no denial of the contention of the plaintiffs that the written clauses of this contract, specifying 14 cents per cubic yard as the price of this work, cannot override the printed clause of the specification allowing 1 cent per cubic yard for each 100 feet over the 600 specified as the ordinary working distance, unless there is an irreconcilable repugnance between them. This is well settled by all the cases, and is a cardinal rule of construction of contracts, wills, and all other documents where repugnance is involved. It must be a fatal repugnance, in its irreconcilability, before any rule of construction is invoked, except the common one that all instruments must be construed according to their terms and tenor. Yet this quality of being reconciled does not depend wholly upon a mere harmony of phraseology, nor does the opposing quality of inconsistency or repugnancy depend on such mere verbal comparison or contrast when the two disputed terms are placed in juxtaposition or structural relation in the contract. If this were the rule, there is no repugnancy here, because there is nothing inconsistent between a stipulation to pay 14 cents generally, and one to pay that sum when the hauling is within 600 feet, and more when it is beyond that distance; and these two clauses, on their words, may stand together, even when the hauling is within narrow limits, and the overhaul depends on an aggregation of minor distances actually traversed, as it may, within closely related streets of a city. But all contracts are to be construed everywhere, not solely with reference to their words, but by the words as interpreted by the subject-matter and the object to be accomplished.

That to be fairly implied is as much a part of the contract as that which the words express, as it is in the construction of statutes. Gelpcke v. City of Dubuque, 1 Wall. 220, 221.  The subject-matter here was the construction of a railroad filling within the city limits, and within a narrow territory, where long "hauls" would not be expected, and where, in drawing the written portions of the contract, the word "haul" is out of the mind, and seemingly abandoned, and the word "handled" substituted, as more appropriate to that work.  The language is:

"It is understood that all material so handled in this district shall be put in place, as directed from time to time by the engineer in charge of the work, for and in consideration of fourteen cents per cubic yard."

And, going back to see what "so handled" may mean, we find that:

"They will take the material necessary for this work from any point which the engineer may designate, between Manhattan road and Lagrange street, on or adjacent to the line of railroad," and "all borrow pits shall be left in such condition as to surface as the engineer in charge shall direct."

It is this that is called "handling," in contemplation of shorter distances than "hauling" would naturally imply.

Something is also claimed on the score of inconsistency because of a provision in the written part of the contract that the railroad company agrees to furnish free of charge to the contractors engines and supplies necessary, except help, to operate the locomotives for moving the dump carts.  Whether this provision would indicate that the 14 cents was the full price for "hauling" beyond the 600 feet of the printed clause is doubtful.  It might be a part of the obligation of the railroad company at either or any price.  Proof might make it plain that this was a special provision for the "hauling" or "overhauling," but it is not a necessary implication from the contract itself, and no importance is attached to it in this judgment.  But, taking the other consideration mentioned, and observing the form and appearance of the paper, partly written and partly printed, it seems a reasonable inference that the written parts embodied the agreement as to the price of the work, and the whole of it, and that the printed clause as to overhauls belongs ordinarily to a different class of work from this city work, like many of the other clauses of the specifications, and that in the process of striking out this clause was inadvertently, and not deliberately, left in the instrument.  It is conceded by the court, however, that if this alleged repugnancy of the two clauses stood alone as the basis of this judgment, the rule of allowing written clauses to control printed clauses would be of doubtful application, at best.  But, taking the fact that the narrow limitations of available territory, and the designation of the relatively close streets as the limits of the "haul," is a specific designation of all the "haul" that can be, it is apparently a repugnancy to provide for a generally indefinite distance that may or may not be more than 600 feet, and left intentionally open, as to that, to cover contingencies that may arise.  It was certain here that the fillings had to be taken within known and established distances, established by the contract, and named in it.  Why, then, should there be any saving clause, which

the printed stipulation is certainly intended to be, about overhauls, as against known and established and specified distances? The court thinks the clause quite inapplicable, if not repugnant, to the other stipulation so carefully written in the contract.

There is, however, another ground for this judgment, which, taken with that just considered, furnishes an altogether solid foundation for it. The case falls within Railroad Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035, and the large class of cases of which it is a type. The language in that case, it is true, is stronger than in this, because there was a special provision that the estimate of the engineer should be final and conclusive, while in this contract there is no such provision that the court finds, and counsel do not point out any such clause. The twelfth clause provides that all differences or controversies which arise under or in reference to this agreement and specifications, or its performance and nonperformance, or the work to which they relate, or in any way whatever pertaining to or connected with said work, shall be referred to the general manager of the railroad company, and his decision shall be final and conclusive. Under this, this controversy might be finally determined by the general manager, but nothing appears to show that it has been, or that he has made any decision. There is no provision, as in the March Case, supra, that the estimates of the general manager shall be final and conclusive, but it amounts to the same thing; for, apart from all that, the absence of any such claim until now, and the fact that the "overhauls" have not been made in the monthly estimates that are provided for, is quite conclusive, as a practical construction of the parties to the contract, that the sole price was the 14 cents of the written contract, and aids the implication of repugnancy already made.

It is said in argument that this does not appear; but the absence of all averments in the petition upon the subject is, as against the pleader, an implication that he has had no such estimates in his favor, and, in the view of the provision for a decision of all controversies by the general manager, that there was never any controversy until this suit was brought to be "referred" to him, whatever that may mean. This is a very strong evidence in the pleading itself that this overhaul claim is an afterthought,—that is, set up after the regular monthly estimates, in which the overhauling would from time to time occur,—and the magnitude of this claim of over $18,000 for overhauls would seem to preclude the idea of any overlooking or postponement of the demand, if it was understood by the parties to be part of the contract, until the final estimate of the engineers provided for by yet another clause of the contract. The plaintiff had a right to collect all but 10 per cent. as the work progressed, and of this $18,000, for overhauls done from day to day and month to month, over $16,000 could have been collected, from month to month, as accrued, if the parties had understood the contract to be as now set up; and, if it had been claimed from month to month, the claim would either have been paid or provoked a controversy that the general manager would have had jurisdiction to settle, or at least, presumably, would have claimed to settle it, under this contract. All this is fair inference—

necessary implication—from this want of all averment in this petition of any fact showing any reason for not collecting the money, or bad faith on the part of the contract arbitrator or adjudicator of the amount due. All pleadings are taken most strongly against the pleader, as well in regard to the significance of that which is absent from the pleading as that which is expressed in it.

Moreover, the rule of the March Case, supra, does not wholly depend upon the provision, found in that particular contract, that the estimate shall be final and conclusive. Not at all. It is just as final and conclusive if the contract only designates some person who is to certify the fact to be determined, unless the petition or pleading sets up fraud, some kind of bad faith, gross negligence, or mistake as an avoidance of the stipulation. In the two cases cited by Mr. Justice Harlan in the March Case, there was no such provision as that the estimates should be final and conclusive, but only a designation of a person to make them, and a provision that payment should be made and title pass when the certificate is made, and the estimate or decision as to amount is fixed. Kihlberg v. U. S., 97 U. S. 398; Sweeney v. U. S., 109 U. S. 618, 3 Sup. Ct. 344. Here the stipulation is that the railroad company agrees to pay the contractor for "all work done, up to and including the last day of the preceding month, certified to by the party of the first part's general manager to be in accordance with this contract." This is quite as imperative and conclusive as the stipulation found in the other cases. Ten per cent. is to be retained until the final completion and acceptance of the work, and then "the percentage so retained, together with the balance due on the final estimate, shall be paid upon the certificate of the party of the first part's general manager that the whole work provided for in this contract is completed and acceptably finished within the time specified."

There is another provision, for the sole benefit, seemingly, of the railroad company, that the engineer, "in computing the final estimate, and giving his final certificate, need not be bound by the preceding estimates and certificates, but such preceding estimates and certificates shall be held to be only approximative to the final estimate, and the said monthly estimates and certificates on unfinished work shall in no case be taken as an acceptance of the work, or a release of the contractor from responsibility therefrom, until the final estimate is made, and the work in its entirety is accepted as complete under this contract." Whatever benefit, if any, may inure to the contractor, under such a stipulation as this, for a revision of the estimates in his favor, and the correction of mistakes, surely he cannot claim that it keeps open a large and substantial part of the work, and, as appears by the figures here, an enormous relative proportion of the compensation for the whole,—$18,274.65 for "overhaul," as compared with $8,023.07 for the other parts of the work actually done under the estimates,—until this final estimate, or that the contractor can withhold any demand by the month, and await the final estimate to set up the claim for "overhaul." He does not allege that he demanded an estimate from month to month of these overhauls, and that it was refused

or postponed; nor that, when the contract was terminated, no matter how, so that he was entitled to a final estimate, he demanded a final estimate which should include them; nor that by any bad faith or fraud they were excluded; nor that by any mutual mistake of fact they were omitted; nor that by any gross negligence they were overlooked; nor anything to relieve against the stipulation of the contract to estimate "all work," and pay for "all work," as it progresses from month to month, less the 10 per cent. retained to cover contingencies or mistakes, and secure fidelity in completion. In the absence of some such averments, under a contract like this, no suit can be maintained by the contractor on the contract. That which has been done and accepted is conclusive, and the amounts of work done and sums due are fixed by the contract certificates of adjudication and judgment. These cannot be reopened, except upon averments such as have been indicated, or the like; and this rule applies as well to monthly estimates as to those which are final, in the sense that they pertain to the last work, and the 10 per cent. retention on that which was intermediate, wherever the contract itself, directly or by necessary implication, provides, as this does, that some named person shall certify to the amount of work done and the sums due. The monthly certificates are, pro tanto, as conclusive for the monthly estimates as that for the final estimate is conclusive for what remains and is finally done. It is "final" only in this sense: that it pertains to the ending up of the work, and the 10 per cent. retained of intermediate estimates, and not in the sense that the contractor may then reopen the older estimates, and extend them to include omitted claims of this nature, which might and ought to have been then claimed and estimated. He has no right, under the contract, to postpone such claims as these for "overhauls" for the final estimate.

Motion granted.