LOGANSPORT & W. V. GAS CO. v. CITY OF PERU.

(Circuit Court, D. Indiana. September 21, 1898.)

No. 9,532.

1. MUNICIPAL CORPORATIONS—GAS FRANCHISE—ORDINANCE AS CONTRACT.
   Where a municipal ordinance granting a gas franchise contained a provision reserving the right to the city council to fix the price to be charged for gas after 10 years, the acceptance of such ordinance by the company created a valid contract, by which the council at the end of 10 years was empowered to fix rates which should be conclusive on both the company and the public, and which cannot be interfered with by the courts in the absence of a showing of fraud or bad faith.

2. SAME—FIXING PRICE OF GAS—REASONABLE EARNINGS.
   Where a gas franchise ran for 20 years, with power reserved in the city council to fix the price of gas after 10 years, in determining at the expiration of that time what is a reasonable rate of charge the council may take into consideration the earnings of the company in the past.

This was a suit in equity to have set aside as illegal the action of a city council in fixing the price to be charged for gas by complainant, in accordance with the terms of an ordinance.

Ferd Winter, Bailey & Cole, Loveland & Loveland, and Mitchell, Antrim & McClintick, for complainant.

A. C. Harris, Jas. F. Stutesman, F. D. Butler, Reasoner & O'Hara, Milton Kraus, and J. F. Lawrence, for defendant.

BAKER, District Judge. On the 12th day of July, 1887, the common council of the city of Peru adopted an ordinance authorizing the laying and maintenance of pipes by corporations, companies, or individuals in the streets, alleys, and public grounds of the city for the purpose of supplying it and its inhabitants with natural gas for heat-

ing and illuminating purposes. The term of the grant was for the period of 20 years from and after the adoption of the ordinance. Section 11, and the amendment thereto, are the only parts of the ordinance needful to be considered. The eleventh section, omitting the schedule of prices as fixed therein, is as follows:

"In consideration of the use of the streets, alleys, avenues, lanes, and public grounds of this city, and for the granting of this franchise, all corporations, companies, firms, and individuals availing themselves of the rights under this ordinance shall, as a condition to the exercise of the franchise herein granted, furnish natural gas to consumers for and at a price not to exceed twenty-five per cent. above the schedule of prices following."

The ordinance was not accepted by any company or individual, because the schedule of prices was deemed unsatisfactory. On November 8, 1887, the common council amended the ordinance, providing as follows:

"That section eleven of the above-entitled ordinance be repealed, and the following substituted in its place: The common council hereby expressly reserves the right to fix the rate and price to be charged for gas after the expiration of ten years from the date of the passage of this ordinance, and every five years thereafter."

This ordinance, as amended, was accepted by the complainant's predecessor, and is as binding on the complainant as though expressly accepted by it. As the complainant and the company to which it succeeded are equally bound by the ordinance and its acceptance, each will be spoken of hereafter as the "complainant."

The city at the time of the adoption of the ordinance possessed the undoubted power to fix the prices to be charged for natural gas, and no corporation or individual had or could acquire the right to pipe gas into the city for sale without accepting, and agreeing to be bound by, the prices so fixed. This provision of the ordinance, when accepted, would, for its validity, rest on the contracting, and not on the legislative, power of the common council. It seems apparent, from the terms of section 11 of the ordinance and the amendment thereto, that the common council was determined not wholly to contract away this right. By the amendment it waived the right to fix prices for the first 10 years, and reserved the right as fully as it originally existed for the last 10 years of the term. It is fairly inferable that the common council would not have granted to the complainant an easement to use the streets of the city except upon the condition that it should have the right to fix the prices of gas for the last 10 years. By the acceptance of the ordinance a contract arose, by which the complainant agreed that the common council in existence at the expiration of 10 years should have the right to fix the prices to be charged for gas. When the common council exercised this reserved power by the adoption of the ordinance complained of, it was exercising a power reserved to it by the express agreement of the complainant. It was not exercising a power of a mere legislative nature, but was exercising a power reserved to it by the express agreement of the complainant. The right so exercised by this agreement was not the right to ascertain the reasonable price of gas, and, when so ascertained, fix it at that rate, but the right reserved was the right to fix

its price to consumers. The word "fix" means to make fast, firm, or immovable. No other person or tribunal, by the agreement of the parties, was clothed with this power. The complainant, by agreement as to the tribunal to fix the prices, is bound by its action, in the absence of fraud, or such gross misconduct as would necessarily imply bad faith. The agreement between these parties seems to me to be less open to construction or doubt than the terms of the contract in Kihlberg v. U. S., 97 U. S. 398. There it was agreed as follows:

"The transportation to be paid in all cases according to the distance from the place of departure to that of delivery; the distance to be ascertained and fixed by the chief quartermaster of the district of New Mexico, and in no case to exceed the distance by the usual and customary route."

This agreement plainly required the quartermaster to ascertain the actual distance from the place of departure to that of delivery, and then to fix that as the distance for which the contractor was to be paid. Anything less than this was manifestly unjust and unreasonable, and could not be regarded as within the contemplation of the parties. To do less than fix the true distance would be to take the earnings of the contractor without just compensation. The chief quartermaster fixed the distance at less than the true one, whether measured by air line, or by the usual and customary route of travel. The supreme court held that the distance so fixed was binding on the contractor, in the absence of fraud or such gross misconduct as would necessarily imply bad faith. It held that though the distance as fixed was less than the true one, and hence was unjust and unreasonable, this was not a sufficient reason to authorize the court to set aside the determination of the chief quartermaster. The doctrine of this case is cited and affirmed in Sweeney v. U. S., 109 U. S. 618, 3 Sup. Ct. 344; Railway Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035; Railway Co. v. Price, 138 U. S. 185, 11 Sup. Ct. 290. The contract in the present case presents less ambiguity than in the case just cited. Here it is agreed that the common council in existence 10 years after the contract is made shall fix the price to be charged for gas to consumers. If the courts, in the absence of allegation or proof of fraud, or gross misconduct implying bad faith, or a failure to exercise an honest judgment on the part of the common council, may overhaul and overturn its action, it would invalidate the contract, and defeat the power of the common council to fix such price as, in the exercise of an honest judgment, seemed to be fair and just to both contracting parties. The power reserved to fix rates and prices is absolute and unlimited, so far as the contract is concerned. If the courts may, simply on the ground that they differ with the common council on the question of what is a reasonable price, nullify and set aside the action of the common council, it amounts to a denial of the right to exercise the power plainly reserved to it. If the complainant desired that the action of the common council, honestly exercised, should be set aside and held void simply on a difference of opinion as to what was a reasonable price for gas, it should have been embodied in the ordinance or its acceptance. In my judgment, the power reserved was the power to fix prices which, when fixed, should be conclusive on the complainant and the public in the absence of fraud or gross misconduct necessarily

implying bad faith, or where there had been a failure to exercise an honest judgment. Any other construction, it seems to me, would defeat the plain meaning of the words used, and leave nothing fixed, if an honest exercise of the power reserved may be overhauled and held void by the courts on a mere difference of opinion as to what is a reasonable price. Besides, any other construction imputes folly to the contracting parties. Under the law as it stood, without any contract or reservation, the common council had at all times the power to fix reasonable rates and prices for gas. Is it to be supposed, with the care shown by the common council to retain control over the price of gas, that it would have solemnly contracted to reserve a right which it already possessed, and which it needed no contract to retain? Something further than the securing of the indefeasible power already possessed by the common council must be held to have been intended. If the reservation is held to go no further than to permit the common council to fix the price of gas at such rate as the court may deem reasonable, then the language is meaningless and without significance. It would be a work of supererogation to reserve a right to do that which the law confided to the common council. This was not the purpose of the reservation and its acceptance. The purpose intended was to agree on a tribunal to determine and fix the price of gas as between the complainant and the inhabitants of Peru. The determination of such tribunal ought to conclude both parties, in the absence of fraud.

The reservation saves to the common council the right to fix the rate and price to be charged for gas after 10 years. At the time the reservation was made, the common council possessed the unquestioned power to fix the price of gas for the whole term of 20 years, as a condition precedent to the right of the complainant to occupy the streets. If the complainant accepted, it would have been bound by the prices so fixed. This right which the common council had to fix the price to be charged consumers for gas, it reserved to itself for the last 10 years; and in my judgment the action of the common council in adopting the ordinance complained of is as binding on the complainant, in the absence of fraud, as though the price had been fixed for the last 10 years of the term in the original ordinance, and accepted by the complainant. This must be so, as the right reserved was an original right; and hence by the complainant's own agreement the common council retained the right to fix prices at the expiration of 10 years, just as it possessed the power to do so when the ordinance was first adopted. The complainant does not seek to impeach the ordinance on the ground of fraud or such gross misconduct as would necessarily imply bad faith, but solely on the ground that the prices fixed are unreasonable. In my judgment, the court cannot declare the ordinance void simply because the court differs with the common council as to what is a reasonable price for gas. But if the court may hold the ordinance invalid if it should appear that the price for gas, as fixed by it, was unreasonable, still, before it would be authorized to do so, it ought to be clearly satisfied by the proofs that the price so fixed was so low as to amount to a taking of the complainant's property without just compensation, or to amount to a denial of due

process of law.   Here the court is met with a difference of opinion important to the determination of this question.   On the part of the complainant it is insisted that, in determining what would be a reasonable price, it is the duty of the court to ascertain the value of the plant at the time the ordinance complained of was passed, and the amount of operating expenses, the amount of interest on the investment, and the fixed charges, including taxes, and to provide a sinking fund to replace the investment at the end of the term, and from these elements determine what would be a reasonable price for gas, without taking into account the earnings during the first 10 years of the term.   On the other hand, it is insisted that the court must treat the whole term of 20 years as a unit, and should take into consideration the earnings of the first 10 years in determining what price would be reasonable for the last 10 years of the term.   The grant was unitary and indivisible, and in the exercise of its reserved right to fix the price it seems to me that the common council had the power, and that it was its duty, to take into consideration the earnings of the first 10 years in determining what price would be reasonable for the last 10 years.   The complainant and its predecessor, in whose shoes it stands, had collected and received from the inhabitants of the city of Peru money enough to replace the entire investment, and at least 10 per cent. per annum over and above such investment.   At the time the last ordinance was adopted the inhabitants of the city of Peru had already paid into the treasury of the complainant and its predecessor a sum largely in excess of the original investment.   Practically, the complainant did not have a dollar invested in the plant and business, outside of what it had exacted and received from the inhabitants of the city of Peru.   It seems to me that the common council was not required to shut its eyes to this condition of things when it came to determine what would be a reasonable price for gas. Surely the people have some rights growing out of this condition of affairs.   I cannot believe that the law is so unjust or unreasonable as to compel the common council and the court to shut their eyes to this condition of things.   If so, then the condition of the people who grant public franchises is most unfortunate.

Taking the condition of things as it existed at the time the ordinance was adopted, it seems to me that the present ordinance will yield all that in equity and good conscience the complainant is entitled to receive.   But if the contention of the complainant is correct, and the common council had no right to look into the previous earnings of the complainant, and into the condition of things as it existed at the time the ordinance was adopted, still I am not clearly enough persuaded that the prices fixed by the ordinance are so unjust and unreasonable as to authorize the court to declare it void.   I have carefully read the evidence, and I do not think it necessary or profitable to review it and to state at length my conclusions in detail.   On the whole case, it seems to me that the ordinance ought not to be adjudged void. The bill of complaint will therefore be dismissed for want of equity, but the present restraining order shall be, and the same is, continued in force until the final determination of the case by the circuit court of appeals, provided an appeal shall be taken and perfected within 90 days herefrom.