Peelle, Ch. J.,
delivered the opinion of the court:
This action arises out of the annulment of a contract entered into by the claimant and the Government through Capt. C. S. Riche, Corps of Engineers, United States Army, whereby the claimant company agreed “ to furnish all labor, appliances, and material, and to excavate channels for watercourses and construct foundations for abutments and piers for four aqueduct bridges along miles 31, 36, 44, and 51, western section Illinois and Mississippi Canal,” the work to be completed by September 28, 1904, which contract was approved by the Chief of Engineers October 30, 1903; buc owing to unfavorable weather work thereunder was not commenced until April following, and from that date up to September 24, 1904, the claimant had performed only about 26 per cent of the entire work, and by reason thereof it asked for an extension of the contract to July 1, 1905, which was granted with the approval of the Chief of Engineers.
Under the extended contract the claimant company continued to work up to December 31, 1904, during which time it performed about 15 per cent additional work, or in all under the contract 41 per cent, thereby earning $18,860.80 (a fraction less than 40 per cent of the contract price), which was paid, less 10 per cent deduction therefrom as stated in Finding YII. The contractor was admonished in November by the Chief of Engineers that any concrete work done in freezing weather would be at its own risk, and if found unstable in the spring would have to be done over at the contractor’s cost. The work continued, however, as before stated, until December 31, 1904, when, owing to the *305 severity of the weather, work was suspended. Of ail the work done, aqueduct No. o was about half finished; at No. 6, a little less than half, while at No. 7 the work was practically completed. At No. 4, the most difficult of construction, no work whatever had been done up to the date of the annulment of the contract hereinafter referred to.
From the close of work December 31, 1904, until the annulment of the contract the condition of the weather was such that no work could be done, yet the engineer in charge notified the contractor February 18, 1905, that the Government had decided under paragraph 70 of the specifications to procure the necessary appliances, materials, and labor therefor, and to construct aqueduct No. 4, leaving the claimant to complete the other aqueducts, to which the contractor responded March 15, denying the officer’s authority so to do, and informing him that all the appliances and materials necessary to complete the work had been purchased and that same would be on the ground when the season opened and the work completed within the extended period. Immediately upon receipt of this information the officer abandoned the taking over of the work at aqueduct No. 4, and in lieu thereof, notwithstanding the weather conditions were the same, he recommended the annulment of the contract.
The findings show that had the contractor been permitted to proceed with the work the same would have been completed within the extended period, but at a loss owing to the lowness of its bid, which was about 30 per cent less than each of the bids of two other persons for the same work.
The claimant’s contention is that the annulment under the conditions stated was capricious and in violation of the contract, and therefore without warrant in law. With this contention we agree.
The provision of paragraph 4 of the contract, upon which the Government grounds its right to annul the same and charge to the contractor the cost of completing the work in excess of the price agreed to be paid to the contractor, reads as follows:
“4. If, in any event, the party of the second part shall delay or fail to commence with the delivery of the material *306 or the performance of the work on the day specified herein, or shall, in the judgment of the engineer in charge, fail to prosecute faithfully and diligently the work in accordance with the specifications and requirements of this contract, then, in either case, the party of the first part, or his successor legally appointed, shall have power, with the sanction of the Chief of Engineers, to annul this contract by giving notice in writing to that effect to the party (or parties, or either of them) of the second part, and upon the giving of such notice all payments to the party or parties of the second part under this contract shall cease, and all money or reserved percentage due or to become due the said party or pai’ties of the second part by reason of this contract shall be retained by the party of the first part until the final completion and acceptance of the work herein stipulated to be done; and the United States shall have the right to recover from the party of the second part whatever sums may be expended by the party of the first part in completing the said contract in excess of the price herein stipulated to be paid the party of the.second part for completing the same, and also all costs of inspection and superintendence incurred by the said United States, in excess of those payable by the said United States during the period herein allowed for the completion of the contract by the party of the second part; and the party of the first part may deduct all the above-mentioned sums out of or from the money or reserved percentage retained as aforesaid; and upon the giving of the said notice the party of the first part shall be authorized to proceed to secure the performance of the work or delivery of the materials, by contract or otherwise, in accordance with law.”
By the terms of the contract the authority to annul the same depends, so far as material here, upon whether the contractor “in the judgment of the engineer officer in charge” failed “to prosecute faithfully and diligently the work” in accordance therewith.
The failure to complete the work within the original contract period, we have found, was in effect the fault of the contractor; but the contract having been extended, said failure, though the same might have been considered by the officer in determining whether a further extension of time should be granted, United States v. Gleason (175 U. S., 588, 606), could not be considered as a basis for the annulment of the contract, as all prior delinquencies in that respect *307 were canceled when the contract was extended. True, as held in a long line of decisions both by the Supreme Court and this court, the decision of the engineer officer in charge, in the absence of fraud or such gross error as to imply bad faith, will control in matters.wherein he is required to exercise his judgment. Kihlbery v. United States (97 U. S., 398); Sweeny v. United States (109 U. S., 618).
Paragraph 70 of the specifications, under which the engineer officer first sought to take over the work at aqueduct No. 4, provides:
“ Should any contractor, not hindered by natural causes beyond his control, fail to maintain a sufficient Avorking force of men and appliances, or if it becomes evident that the work is not being prosecuted with proper diligence to complete it within the contract time, the engineer officer in charge shall have power to employ additional labor and appliances and to procure necessary material at such cost as he may deem necessary,” etc.
As the claimant was at the time being hindered by natural causes from prosecuting the Avork it Avas therefore without fault; and, being without fault, the action of the engineer officer in seeking to take over the work as aforesaid was erroneous and unauthorized. The work being suspended by natural causes, the claimant was excused from diligent prosecution as well as from maintaining a sufficient working force. To have proceeded with the work at the time would have retarded it because of unfavorable weather, and the claimant had already been notified by the engineer officer that any defective work would have to be done over at its own cost when the next season’s work began.
This is not a case where unexpected difficulties and hardships were encountered in the performance of the contract, as in the cases cited and relied upon by the defendants. If mere hardships and difficulties had been encountered in the performance of the contract whereby the cost of the work had been increased above that estimated by the contractor Avhen making its bid, it would nevertheless be required to perform its contract. But that is not this case, as here the work Avas under suspension at the time the contract was annulled by reason of freezing Aveather and the admonition of *308 the engineer in charge. It therefore follows that the question whether the contractor had failed to prosecute the work faithfully and diligently in accordance with the specifications and requirements of the extended contract had not arisen, and the annulment of the contract by the engineer in charge, based on an assumption that the contractor had so failed, was so capricious, unwarranted, and erroneous as to imply bad faith on his part, which worked a hardship upon and a loss to the contractor, who stood ready to comply with its contract and complete the same within the extended period, as the officer had been advised.
In the case of United States v. Barlow (184 U. S., 123), affirming this court (35 C. Cls., 514), it was held that, while the decision of the engineer in charge as to the quality of material was final when properly exercised, such decision could not be exercised in advance of the work so as to forestall his judgment of materials when actually furnished. Nor could the officer under the circumstances of this case assume that the contractor would thereafter fail to faithfully and diligently prosecute the work. Nothing had occurred during the extended period upon which such an assumption could be based. On the contrary, after the extension and admonition of the officer that work found unstable by reason of freezing weather would have to be done over, the contractor continued to work until December 31, 1904, before suspending. The suspension, therefore, was not only by reason of the severity of the weather, but by reason of the notice and admonition of the officer as well, of which he had been advised.
While the court must presume that the contractor in submitting its bid took into consideration the difficulties which it might, as a prudent man, expect to encounter in the performance of the undertaking, the contract itself makes provision for delay when “ hindered by natural causes beyond his control.” True, this provision is embodied in paragraph 70 of the specifications having to do with the employment by the engineer officer of additional labor and appliances to complete the work if the contractor is delayed for other than natural causes; but reading the contract as a whole, the con *309 tractor on account of weather unfavorable for such work, and especially in view of the notice and admonition of the engineer officer that unstable work would have to be done over, was in law excused for the delay.
It must therefore be held that the Government is liable to the claimant for the loss it sustained on account of the unwarranted, capricious, and erroneous acts and bad faith of the Engineer officer in charge.
While we hold the Government liable on the ground that but for the annulment of the contract the work could have been completed by the contractor within the extended period, still there can be no recovery for profits for the reason that the completion of the work would, as found, have been at a loss to the contractor and hence no profits.
The claimant, however, not being at fault, is entitled to recover the retained percentages, being the balance due for the work actually done. This item, as set forth in Finding VII, is therefore allowed.
The claimant is also entitled to recover for the loss suffered in having to dispose at a disadvantage without its fault of the materials on hand for the work Avhen the contract was annulled. That is to say, under the decision in United States v. Behan (110 U. S., 338) the claimant is entitled to recover for its outlay and expenses in procuring said materials less the amount for which it was compelled to sell the same under the circumstances set forth in Finding VI.
For the item of $750 for excavation between piles, set forth in Finding VIII, we must hold the claimant is not entitled to recover.
By paragraph 40 of the specifications the material, of whatever character, was to be “excavated and removed to the grades, slopes, and lines given by the Engineer officer in charge,” the same to be paid for as excavation. The findings show that the level given by the engineer in charge was correct, and therefore any excavation that had to be done between piles was within the contract, and therefore this item is disallowed.
On the item for $24.15 for crushed stone in lieu of gravel concrete, as set forth in Finding IN, we hold that the claim *310 ant is not entitled to recover, as the crushed stone was voluntarily furnished by the claimant with the consent of the Engineer officer in lieu of pebbles to enable it to do the work.
The item for inspection, however, during the extended period, as set forth in Finding X, we hold was properly chargeable against the claimant, as the extension of the contract in accordance therewith was upon the condition that all the increased cost to the United States during the delay should be deducted from any payments due or to become due the claimant, and as no part thereof appears to have been incurred subsequent to the annulment of the contract the defendants are entitled to recover the same on their counterclaim, which is ordered recouped against a like amount of the sum found in favor of the claimant, leaving due the claimant, for which judgment is ordered, the sum of $6,244.63.
The defendants’ counterclaim is otherwise dismissed.