### KOBER v. UNITED STATES.
### No. 5786.

United States Court of Appeals
Fourth Circuit.

Nov. 8, 1948.

Mark P. Friedlander, of Washington, D. C. (Leroy Bendheim, of Alexandria, Va., on the brief), for appellant.

T. Hayward Brown, Atty., Department of Justice, of Washington, D. C. (H. G. Morison, Asst. Atty. Gen., and George R. Humrickhouse, U. S. Atty., of Richmond, Va., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from a decree requiring the appellant William Kober to assign to the United States all rights in certain inventions covered by applications for patents pending in the Patent Office, serial Nos. 543,744 and 686,093 respectively. The District Judge found that the inventions were made by appellant while he was employed by the United States and assigned to the duty of developing electrical appliances of the sort covered by the applications for patents, under a contract providing that title to such inventions should be vested in the United States upon a determination by the Chief Signal Officer, which had been duly made, that the public interest so required. The District Judge held that the inventions belonged to the United States under the express terms of the contract, "as well as under the general law".

The facts are that appellant, a graduate engineer was employed by the United States Army, Signal Corps, Engineering Laboratories, near Fort Monmouth, New Jersey, from January 1943 to January 1947. In January 1943, before being assigned to laboratory work involving research and development projects, he agreed to the provisions of "Patent Memorandum No. 3, which is as follows:

"You are hereby assigned to develop improvement in arts of value to the Chief Signal Officer. It is expected that this work may result in the discovery of patentable features, and your assignment to this work is for the particular purpose of vesting in the United States all right, title and interest to any invention that you may make while engaged in the work assigned, if in the opinion of the Chief Signal Officer the public interest demands that the invention be owned and controlled by the War Department.

"Acceptance of assignment to this work will constitute an agreement on your part to execute the papers required for complete assignment of any such invention to the United States in case the Chief Signal Officer decides that the invention should remain secret, or to execute the papers necessary for making application for patent and the assignment of the patent to the United States if secrecy is not necessary or is necessary only for a limited time. In the case of an invention which the Chief Signal Officer decides should remain secret acceptance of this assignment also constitutes an agreement on your part that you will not disclose the invention to unauthorized persons until such time as you are informed in writing by the Director of the Signal Corps Ground Signal Service, that the need for secrecy has ceased.

"The assignment of the invention to the United States must be drafted in form to comply with requirements of law relating to patent applications coming under this category; but such assignment or instrument of transfer may in a proper case include suitable reservations to enable you to retain or repossess your commercial rights, in

whole or in part, if and when the need for secrecy ceases to exist.

"This notice of assignment to develop improvements in arts of value to the Signal Corps shall not be construed as divesting you of ownership of any invention made by you while engaged on this work, other than those which in the opinion of the Chief Signal Officer should be owned and controlled by the War Department to safeguard the public interest, except that the United States shall be entitled to a nonexclusive license to any and all inventions made by you in the course of the work assigned in the same way as if this special assignment had not been made."

In February or March 1943, appellant conceived an invention relating to an alternating current generator, and in August 1944 an invention designed to maintain within limits the voltage output of a generator notwithstanding varying loads. He contends that he was not assigned to the development of these devices under his contract of employment; but the District Judge has found that he was so assigned and this finding is supported by substantial evidence including admissions made by appellant himself in statements filed by him as a basis of promotion in the government service. We must accept this finding, since there is no basis for holding that the judge who saw and heard the witnesses and was in better position than we are to judge their credibility, was clearly wrong in accepting the evidence relied on by the government. In making applications for patents on these inventions, appellant secured and filed certificates of the Secretary of War that the inventions were likely to be used in the public interest and was relieved of the payment of fees of the Patent Office under the Act of March 3, 1883, as amended, 35 U.S. C.A. § 45.

In 1946, appellant prepared a document showing the theory of the first of his patents; and this was used by his superior, a Colonel Moynahan, without his knowledge, in negotiations with officials of the General Electric Company looking to the manufacture of the device for the government. Appellant protested against this disclosure and considerable feeling was developed between him and Colonel Moynahan. He was ordered to make a public apology for language which he had used to Colonel Moynahan, and resigned his position rather than do so. Demand was then made upon him that he either execute to the government licenses authorizing it to license others under the patents or make assignments to the government retaining licenses for himself which would authorize him to enter into any commercial arrangements covering the patents that he might desire. Upon his refusal to accede to this demand, the Chief Signal Officer of the United States, Major General S. B. Akin, made a finding that, in his opinion, the public interest demanded that the invention described in appellant's applications be owned and controlled by the War Department and enclosed papers of assignment for him to execute. He refused to execute these, and this suit was thereupon instituted to require him to assign to the government his rights under the patent applications.

At the hearing in the court below Major General Akin testified that he made the determination that it was in the public interest for the patents to be owned and controlled by the War Department on recommendations submitted by his technical advisers and on his personal knowledge of the facts in the case. He stated that the facts laid before him were that the devices covered by appellant's inventions were needed by the armed forces of the United States and that it was desirable that the government own the patents in order to secure quantity production by private maunfacturers and lower prices as a result of such production. He said that he knew nothing about the controversy that had arisen between appellant and Colonel Moynahan or the feeling resulting therefrom. There is not the slightest evidence that General Akin acted otherwise than in entire good faith in making the determination or that any person who furnished information to him with regard to the matter was actuated by improper motives. Counsel for appellant complain that they were stopped in their examination of General Akin; but the record shows that thorough examination was permitted as to the facts which were before the General and that the court merely declined to permit examination to show that

he had made a mistake. While counsel stated generally that they proposed to show that fraud was perpetrated upon the General in securing his determination, this appears to be mere brutum fulmen, with no specific question or offer of proof to support the statement.

■ Upon these facts, we think that the judgment appealed from was clearly correct. In the absence of agreement fixing the rights of the parties, the rights of an employee in an invention which he has made are subject to different rules dependent upon the facts. If he has made the invention on his own initiative and on his own time and resources, the invention belongs to him and the employer has no rights in it. If while engaged in a certain line of work for his employer he has devised or improved a method or instrumentality for doing the work, using the property of the employer and the services of other employees to develop his invention and has assented to the use of same by the employer, the invention is his property subject to an irrevocable license, or shop right, in the employer. If he makes an invention while employed to make investigations and conduct experiments for the purpose of making it, the invention is the property of the employer, who is entitled to the fruits of the labor for which he contracted. These rules apply to employees of the government as well as to those of private persons. See United States v. Dubilier Condenser Corporation, 289 U.S. 178, 53 S.Ct. 554, 77 L.Ed. 1114, 85 A.L.R. 1488, and Houghton v. United States, 4 Cir. 23 F.2d 386, where this court dicussed the matter fully with citation of the applicable authorities. In the case at bar, however, these rules need not be considered except as furnishing background for the agreement of the parties heretofore quoted which deals fully with the matter. The effect of that agreement, aside from the provisions for secrecy, is to provide that any invention made by appellant while engaged in the work to which he has been assigned shall belong to the United States, if in the opinion of the Chief Signal Officer it is in the public interest that it be owned and controlled by the War Department, otherwise it shall belong to appellant subject to a non exclusive license on the part of the United States. The determination by General Akin fulfilled the condition of the contract and vested title to the invention in the United States.

■ Appellant questions the validity of the contract on the ground that it is lacking in statutory foundation. If it were held invalid, this would not help appellant, as the government would then be entitled to the invention on the ground that appellant had made it while employed for the purpose of conducting investigations and making experiments from which it was anticipated that patentable inventions would result. We do not think, however, that the contract is invalid. On the contrary, it is a reasonable agreement entered into by the government for a lawful and proper purpose and finds ample support in the statutes. See Act of August 29, 1916, c. 418, sec. 1, 39 Stat. 622, 10 U.S.C.A. § 1223; Act of July 2, 1942, c. 477, sec. 8, 56 Stat. 631-632.

■ It is argued that the contract, properly construed, does not authorize any determination by the Chief Signal Officer "except to insure military secrecy or to safeguard the public interest in a military way." It is perfectly clear from a reading of the contract, however, that the provisions as to secrecy are entirely separate and distinct from those relating to the determination that the public interest requires ownership and control by the war department. The provision of paragraph two of the contract, upon which appellant relies, relating to a determination by the Chief Signal Officer that the invention should remain secret, provides for an assignment in such case of the invention as distinguished from the patent. This is followed by a provision requiring the assignment of the patent, "if secrecy is not necessary or is necessary for only a limited time." The paragraph closes with a requirement that the invention be not disclosed until the need for secrecy has expired. The third paragraph relates to form of assignments of patents as to which secrecy is required, but provides that reservations of rights may be made "in a proper case" to be asserted when need of secrecy has expired. The final paragraph makes clear that by a

"proper case" is meant a case in which the Chief Signal Officer has not determined that the patent should be "owned and controlled by the war department to safeguard the public interest." That paragraph makes it equally clear, when considered with the first paragraph, that such a determination by the Chief Signal Officer vests the right to such invention in the United States.

And we do not think that the rights of the United States were in any way prejudiced by the fact that appellant was allowed to apply for patents with assignment of licenses to the government, or that certificates of the Secretary of War were filed to permit this to be done without payment of Patent Office fees, as allowed by the Act of 1883, as amended. Until the Chief Signal Officer made his determination with respect to the public interest, appellant was entitled to his inventions, subject to this license, and to apply for patents to protect same; and no action taken or allowed as a matter of course for the protection of rights, which were undoubtedly his until action by the Chief Signal Officer, should be held to preclude the government from assertion of rights under the contract after the Chief Signal Officer made the determination for which the contract provides. See Houghton v. United States, supra; Grand Trunk Western Railway Co. v. United States, 252 U.S. 112, 40 S.Ct. 309, 64 L.Ed. 484; Wisconsin Central R. Co. v. United States, 164 U.S. 190, 17 S.Ct. 45, 41 L.Ed. 399.

We quite agree with appellant that good faith on the part of the Chief Signal Officer in making the determination for which the contract provides was essential to vest title to the inventions in the United States, and that his decision would be reviewable for fraud, bad faith, or failure to exercise an honest judgment. United States v. Gleason, 175 U.S. 588, 20 S.Ct. 228, 44 L.Ed. 284; Kihlberg v. United States, 97 U.S. 398, 24 L.Ed. 1106. There is nothing in the record, however, upon which to base a contention of fraud, bad faith or failure to exercise an honest judg-ment, nor is there any basis for saying that evidence to this effect was excluded. As stated above, general charges of fraud were made in the argument of counsel, but there was no tender of proof which would justify sending the case back. There was no pretense of compliance with the requirement of rule 43(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which provides:

"In an action tried by a jury, if an objection to a question propounded to a witness is sustained by the court, the examining attorney may make a specific offer of what he expects to prove by the answer of the witness. The court may require the offer to be made out of the hearing of the jury. The court may add such other or further statement as clearly shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. In actions tried without a jury the same procedure may be followed, except that the court upon request shall take and report the evidence in full, unless it clearly appears that the evidence is not admissible on any ground or that the witness is privileged."

Even though the Chief of the Signal Corps acted in good faith, his determination would be set aside if it were shown to have been fraudulently induced by false statements or other fraudulent conduct on the part of his subordinates or others, just as the award of an arbitrator might be impeached for fraudulent conduct in its procurement; but there is no evidence or offer of evidence of this sort. It was not competent, of course, for the trial court to substitute its judgment for that of the Chief of the Signal Corps or enter into an inquiry as to whether or not he had made a mistake of judgment. This was what the judge refused to do; and there was no offer of any specific evidence to sustain the charge of fraud.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.