Weldon, J.,
delivered the opinion of the court:
In October and December of the year 1882 the claimant entered into two written contracts with the United States, both of which are alleged in extenso in the petition. Under those contracts the claimant was to perform a large amount of work in building levees on the Mississippi Kiver, in the State of. Louisiana, and for which he was to receive a stated compensation, to be paid by the defendants as the work progressed. In the making of said contracts Major Stickney represented the United States, and to him or his successors is reserved, by the terms of the contracts, much power and discretion, in the exercise of which the rights of the claimant mig'ht be very seriously affected. By the terms of the agreements the work on Kemp Breaks was to be commenced on or before the 9th day of October, 1882, and be finished by the 1st day of February, 1883 j but, under the power given fo said Stickney to extend the time for completion, there was an extension, from time to time, until the 1st of February, 1884. So with the contract for work on Hardscrabble and Bondurant, the time for its completion was extended by the officer of the Government, commensurate with the time allowed on Kemp Breaks.
About the 1st of January, 1884, Major Stickney became dissatisfied with the progress of the work, made some investigation by an inspection of its condition; on the 4th of January he declared the contract as to the Hardscrabble and Bondurant annulled, and on the 6th of the same month declared the same as to the work on Kemp Breaks. The power which he claimed and exercised is dependent upon the following provision of the contracts :
“ If in any event the party of the second part shall delay or fail to commence with the delivery of the material or performance of the work on the day specified herein, or shall, in the judgment of the engineer in charge, fail to prosecute faithfully and diligently the work in accordance with the specifications and requirements of this contract, then, in either case, the party of the first part or his successor, legally appointed, shall have power, with the sanction of the Chief of Engineers, to annul this contract by giving notice in writing to that effect to the party (or parties, or either of them) of the second part, and upon the giving of such notice all money or reserved percentage due or to become due to the party or parties of the second part, by reason of this contract, shall be and become forfeited *135 to the United States; and the party of the first part shall be thereupon authorized, if any immediate performance of the work or delivery of the material be, in his opinion, required by the public exigency, to proceed to provide for the same by open purchase or contract, as prescribed in section 3709 of the Revised Statutes of the United States.”
To that clause of the contract there is the following proviso:
“ That if the party or parties of the second part shall by freshets, ice, or other force or violence of the elements, and by no fault of his or their own, be prevented either from commenci ng or completing the work, or delivering the materials at the time agreed upon in this contract, such additional time may in writing be allowed him or them for such commencement or completion as in the judgment of the party of the first part, or his successor, shall be just and reasonable; but such allowance and extension shall in no manner affect the rights or obligations of the parties under this contract; but the same shall subsist and take effect and be enforceable precisely as if the new date for such commencement or completion had been the date originally herein agreed upon.”
By the terms of the contracts the claimant is to receive 28£ cents per cubic yard for embankment, and $35 per acre for felling timber on the “ Kemp Breaks” levee; and for the work embraced in the second contract he is to receive the sum of 28 cents per cubic yard for embankment, plus 10 per cent, for felling timber, as determined by the engineer in charge. Under the first agreement the amount of the work is about 340,000 cubic yards, and under the second about 330,000, aggregating the sum of 670,000 cubic yards.
The extent and quality of the work to be performed under both agreements are subject to following provision as to the power and duty of the officer in charge:
“All materials furnished or work done under this contract shall, before being accepted, be subject to a rigid inspection by an inspector appointed on the part of the Government; and such as does not conform to the specifications set forth in this contract shall be rejected. The decision of the engineer officer in charge as to quality and quantity shall be final.”
As the petition claims for extra work, it is necessary that we cite the provision of the contracts on that subject.
“ No claim whatever shall at any time be made upon the United States by the party or parties of the second part for or on account of any extra work or material performed or furnished, or alleged to have been performed or furnished, under or by virtue of this contract, and not expressly bargained for *136 and specifically included therein, unless such extra work or material shall have been expressly required, in writing, by the party of the first part or liis successor, the prices and quantities thereof having been first agreed upon by the contracting parties and approved by the Chief of Engineers.
Upon the subject of payments the said contracts provided as follows:
“ Payment shall be made to the said Patrick J. Kennedy at or near the end of each month (reserving 10 per cent, from each payment until the whole work shall have been delivered and accepted), on measurement of work done during the month, deducting the allowance for settling.”
These are the only clauses of the contracts which are necessary to be noticed in the present connection. After some effort in the War Department, upon the part of the claimant, to adj ust his alleged rights against the Government, the case was referred to this court by the Secretary of War under section 1063 of the Revised Statutes. Upon that reference the said claimant filed a petition, demanding an aggregate sum, composed of the following items:
“ The plaintiff claims that he is justly entitled to have and receive from the defendant the following sums of money:
1st. Money due plaintiff and withheld by defendant for work
done on Kemp Levee. $5,513.35
Money due plaintiff and withheld by defendant for work done
on Hardscrabble and Bondurant Levees. 14,906.06
For work done and earth placed under the contracts in December, 1883, for which defendant made no estimates. 23,000.00
For extra work done on Kemp Levee from December 22,1883, to
January 4, 1884 . 4,275.00
For clearing base on Kemp Levee. 750.00
For extra dirt wheeled at Potter’s Lake, on Kemp Levee. 570.00
For extra dirt wheeled at the stations 124 to 126, Kemp Levee. 285.00
For draining on Hardscrabble and Bondurant Levee, by order of Major Amos Stickney. 885.00
50,184.41
2d. For damages sustained by plaintiff by reason of the wrongful annulment of said contracts and the refusal of the defendant to let plaintiff perform the work contracted for and
receive the stipulated compensation. 27,284.70
3. For damages for wrongful seizure by defendant of plaintiff’s plant, camps, houses, outfit, and tools. 10,000.00
4th. For use and occupation of said plant, camps, houses, outfit, and tools from January 4, 1884, to February 5, 1884. 5,000.00
5th. For damages caused the plaintiff by defendant by reason of defendant’s default and neglect to furnish proper and correct
profiles and notes for the work on Kemp Levee. 5,000.00
6th. For damages to plaintiff from defendant’s default and delay in making the payments to him as required by contracts . 5,000. 00
Total.:. 102,469.11
*137 To the claim thus made the defendants interpose the general defense that in pursuance of the right of the United States under the contracts, Major Stickney, on the 4th and 6th of January, 1884, by the sanction of the Chief of Engineers, annulled said contracts ; that the exercise of that power was justified by the condition of the work and the inability of the claimant to complete the same within the time limited by the last extension; and that as a legal consequence of such annulment all moneys due to’claimant on the 4th and 6th days of January, 1884, became and are forfeited to the United States. It is insisted by claimantthatthe contracts wereimproperly annulled. By the terms of the contracts, relating to the superintendence and control of Major Stickney, he is empowered, with the sanction of the Chief of Engineers, upon being satisfied that the contractor is not prosecuting the work faithfully and diligently, to declare the contracts annulled, and to proceed, if the public exigency demands it, to have the work finished in pursuance to the terms of section 3709 of the Revised Statutes.
It is alleged in the petition that Maj. Amos Stickney, United States engineer, acting as the agent of the defendants, declared the said contracts annulled and forfeited, and so notified the claimant on the 4th and 6th of January, 1884. Upon the strict rule of pleading, as against the claimant, it might be assumed that the declaration of forfeiture was by the sanction of the Chief of Engineers, and the notice of such annulment on the part of the said agent was in strict accordance with the requirements of the contracts; but the findings show that on said dates the said agent of the United States notified the claimant orally in person of the annulment of the agreements j that no objection was made by the claimant as to the form of the notice, though he-protested against the forfeiture as beiug unauthorized.
A letter notifying claimant was afterwards addressed by Major Stickney to the claimant. The letter was directed to-Vicksburg, Miss., and forwarded to New Orleans, but did not reach him until some time in March. The claimant did not reside at Vicksburg, and was not in the habit of receiving his mail at that place. It is not necessary to discuss and determine how far the claimant is bound by the allegations of his petition, as the court holds that it is now too late for him to object to the form of the notice. The finding shows that the claimant *138 made no objection to the form in which the forfeiture was declared, but simply objected to the right of the Government through its agent to exercise the power of annulment.
Conceding that although the agreements were not annulled in strict accordance with the terms of the instruments, yet the claimant not having objected to the want of a written notice, and having submitted to the fact of annulment by the abandonment of the work (though denying the right of the defendants to annul the contracts because of the absence of the conditions upon which that right is predicated), the act of the parties must-be regarded as equivalent to the exercise of the power of annulment in strict accordance with the terms of the agreement. If we were to hold otherwise it would be a contradiction of what both parties intended and understood at the time. Courts will, if possible, give effect to the acts of parties as was intended by them at the time the acts were performed. If the claimant had refused to regard the act of the engineer as an annulment, the presumption is that the engineer would have pursued the power strictly and have given him a written notice ; but no objection being made, the officer had the right to assume that the claimant had waived a written notice. The law does not presume a waiver on the part of the person against whom the forfeiture is to be enforced, but a waiver can be inferred from silence and an acquiescence in the condition which would result from a strict exercise of the power of forfeiture. (Knickerbooker Ins. Co. v. Gould, 80 Ill., p. 388; Boynton v. Bodwell, 113 Mass., 531.) The findings show that the claimant abandoned the further prosecution of the work immediately on receiving oral notice from the agent of the defendants that the agreements were annulled. He not only abandoned the work, but after the declaration of forfeiture was made l*e assented to the use of his plant by the United States upon the statement on the part of Major Stickney that he would pay him for it; and he is now seeking in this proceeding a compensation for the use and value of his property. We do not regard the letter mailed to Vicksburg in a few days after the declaration of annulment, made on the 4th and 6th of January, and which was received at New Orleans by the claimant in about two months, as curing any defect there might have been in the original notice, as a requirement of a notice in writing is not discharged by mailing a notice ■unless received by the party. The notice was sent to a point *139 at which the claimant did not reside, was not present, and where he had not been in the habit of receiving his mail. The fact that he received it two months afterwards is of no consequence, as he had been cognizant of the information contained in the letter from the moment the fact happened.
The most difficult question in the case is, “ At the time it is alleged that Major Stickney declared the contracts annulled, to wit, on the 4th and 6th of January, had he authority to do so under the circumstances and his powers as defined by the agreements'?”
The substance of this inquiry has been very ably argued on both sides by the counsel for the claimant and the defendants, and is one of the questions submitted for re-argument by order of the court. The question is of a mixed character, to be determined by a careful examination of the progress and development of the work as shown by the evidence, in connection with a construction of those clauses of the agreements which define the pow'er of the officer in charge. These contracts, in analogy to most contracts relating to the construction of public improvement and in relation to large private enterprises, give to the engineer, in charge extraordinary power of supervision; and while such interests seem to require that power in the hands of the superintendent, the exercise of the power is always subjected to judicial scrutiny when the rights of the parties become the subject-matter of litigation. The law applicable to this branch of the case is very clearly stated by Justice Harlan in the case of Kihlberg v. The United States (97 U. S. R., 398). In that case — it being a transportation contract — one of the clauses of the agreement provided that the distance should be “ ascertained and fixed by the chief quartermaster.” And the court said:
u Be this supposition as it may, it is sufficient that the parties expressly agreed that distance should be ascertained and fixed by the chief quartermaster, and in the absence of ffaud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment, his action in the premises is conclusive on the appellant as well as upon the Government.”
It is not necessary to cite further authorities on this point, as this case embraces the philosophy of the law on that subject. Under this decision at least one of three conditions must exist before the decision of the arbiter can be impeached — fraud, bad *140 faith, or a failure to exercise an honest judgment. A mere mistaken judgment not tainted with fraud, bad faith, or dishonesty will not be sufficient to avoid the decision of the arbiter. A mistake in calculating the result, having determined the factors, is always open to correction, as that is in effect a recognition of the act of the party.
There is a great amount of testimony in the record conflicting in its character as to the condition of the work at the time of annulment and ability of the claimant to perform the agreements within the time limited by the last extension. Upon the question as to what was the exact limitation of the last extension, the court holds that it was until the 1st of February, 1884, and upon that basis the engineer had the right to calculate and determine the ability of the claimant to perform at the time he declared the contracts forfeited. While the Chief Engineer had the right to determine the question of annulment, the engineer in charge, by the express terms of the contract, had a right to determine the question and extent of extension.
It is true the correspondence between the engineer in charge and the Chief of Engineers shows that the latter acquiesced in the policy of extending the contract to the 15th of February, but the result of the correspondence after that time between claimant and Major Stickney fixes in law and fact the extension at the 1st day of February, 1884. The fact that the engineer in charge wrote to the claimant that he had instructions to extend it to the 1st, when in truth he had the consent of the Chief of Engineers to extend the time to the 15th of February, does not extend the time beyond the 1st, and is only important to be considered in connection with the question of good faith on the part of the officer. While the engineer in charge might take the opinion of the Chief of Engineers upon the expediency of extending the time, the fact that he did so did not abdicate his power under the contracts, but left inherent in him a discretion under that clause of the agreements. The elaimant accepted the 1st of February, and in the absence of fraud he is bound by it. After a very careful examination of the testimony and consideration of the circumstances, the court fails to find that the engineer in charge improperly and without warrant annulled the agreements on the 4th and 6th' of January, 1884.
When the power was exercised by the officer it did not oper *141 ate al) initio, but only affected the rights of the parties as to the subsequent power of performance. Whatever rights the claimant had, which in their nature were consummate, were preserved to him notwithstanding the annulment.
This conclusion (as to the power of the engineer to annul contracts) was reached as best sustained, and brings the consideration of the court to the question as to the rights of the parties under the contracts to the money due the claimant at time the forfeiture was declared. It is insisted by the defendants that all such money became forfeited to the United States as the liquidated damages of the contracts. If the parties, by the stipulations of their agreements, have provided and contemplated such a result, then it must follow, harsh though it be; and we are not permitted to examine the question of damages, but must recognize what the parties have agreed to on that subject. Forfeitures are recognized, but not .favored by the law. The due and forfeit of the bond are not to be extended beyond the requirement of the technical right. Courts are loath to enforce penalties or forfeitures, and will not do so except in clear and imperative cases. Forfeitures and estoppels are not favored defenses and are always subordinated to the equity of the right if possible. (Cape Ann Granite Co. v. The United States, 20 C. Cls. R., 12; Andrews v. Lyons, 11 Allen, 349; Louensherry v. Dopen, 28 Barbour, 44; Water’s Appeal, 35 Penn. Stat., 523; Babcock v. Parry, 8 Ohio Stat., 270; State v. Pepper, 31 Ind., 76.) In this connection we are called upon to construe the following provision of both agreements:
“And upon the giving of such notice all money or reserved percentage due or to become due to the party or parties of the second part by reason of this contract shall be and become forfeited to the United States; and the party of the first part shall thereupon authorize, if an immediate performance of the work or delivery of the materials be in his opinion required by the public exigency, to proceed to provide for the same by open ¶ purchase or contract, as prescribed in section 3709 of the Be-vised Statutes of the United States.”
In construing this provision of the agreements the court is led to consider whether the reserve is, by the terms of the agreements, a forfeiture or penalty, or whether by necessary construction it is liquidated damages, or, in other words, compensation for what the parties agreed was to be regarded as the consequence incident to a failure on the part of the claimant to perform the work according to the requirement of his *142 óbligation. The question whether a nominated sum is to be regarded as a mere penalty or liquidated damages is often a question of difficult solution, and courts are inclined, as has-been stated, to hold it as a mere penalty, so as to permit parties to prosecute and defend upon the broad equities of their rights. It is not necessary to enlarge in this connection by the citation and examination of many decisions. The case-which we regard as the most complete authority on this question is the case of Van Buren v. Digges (11 Howard, 361). In passing on the exact question presented by these contracts the court say:
“The second exception by the defendants states that in addition to the evidence previously tendered by him he offered proof tending to show the peculiar adaptation of the house contracted for, both in its design and situation, to the defendant’s personal and professional pursuits and convenience, and that the amount of 10 per cent, oil the contract price stipulated to be forfeited if the house was not entirely finished and ready for occupation, as therein provided, on the 25th of December, 1844, was intended by the parties as and for liquidated damages that would result and fairly belong to the said defendant by reason of said failure to finish the said house on the 25th of December, 1844, and that the court refused to hear- the evidence thus tendered.
“ In the refusal of the court to admit the evidence thus tendered we think they decided correctly. It would have been irregular in the court to go out of the terms of the contract and into the consideration of matters wholly extraneous, and with nothing upon the face of the writing pointing to such matters-as proper or necessary to obtain its construction or meaning-The clause of the contract providing for the forfeiture of 10 per centum on the amount of the contract price ujion a failure to-complete the work by a given day can not properly be regarded as an agreement or settlement of liquidated damages. The-term forfeiture imports a penalty; it has no necessary or natural connection with the measure or degree of injury which may result from a breach of contract or from an imperfect performance. It implies an absolute infliction regardless of the nature and extent of the causes by which it is superinduced.
“ Unless, therefore, it shall have been expressly adopted and declared by the parties to be a measure of injury or compensation it is never taken as such by courts of justice, who leave it to be enforced, where this can be done, in its real character, viz, that of a penalty. In a defense like that attempted by the defendant in the Circuit Court, upon the essential justness and fairness of the acts of the parties, a positive immutable-penalty could hardly be applied as a fair test of their merits.”
*143 The case of Quinn v. The United, States, while not going to the extent of the Van Burén Case, may be cited as authority in the direction of that case. (Quinn v. United States, 99 U. S. R., 30.)
It will be seen that the words “ shall be and become forfeited” have in effect been construed in the decision in 11 Howard, aud they are the controlling words in the agreement, upon which it is insisted the damages are predicated in this case. The court say:
“ The term forfeiture imports a penalty; it has no necessary or natural connection with the measure or degree of injury which may result from a breach of contract or from an imperfect performance. It implies an absolute infliction, regardless of the nature and extent of the causes by which it is superin-duced.” N
Following the inclination of the law as it is found in the many decisions and upon the faith of what the Supreme Court has decided in those two cases, we hold that the reservation of the 10 per cent., as affected by the forfeiture, is a ptenalty and ñot liquidated damages, and the claimant is only subjected to such damages as were incident to his failure to perform the contract. The findings do not show that the United States were subjected to any increased expense in consequence of the failure, and no claim is made that they were; so that the petitioner is entitled to the contract value of the work he did before the contracts were annulled. The court having found that the agreements were properly annulled, consistent with the power and the circumstances, all claim for prospective profits is eliminated from the controversy. In that view of the case the findings do not show any facts upon the question of profits.
The United States having taken possession of the plant and used the provisions of the claimant by his assent, they became liable for the reasonable use and value of such property.
The court finds that in consequence of the levee being raised higher than tbe original plan and estimate, and. after the removal of the works of the claimant, he was subjeqted to increased expense in bringing the work to the new adjustment. For that increased expense the claimant has a right to recover.
A claim is made for extra work. This demand can not be *144 sustained, for the reason that no evidence is offered tending to show that the work, if performed, was done in pursuance to the requirement of the contracts in that particular. Upon the subject of extra work the contracts provide:
11 No claim whatever shall at any time be made upon the United States by the party or parties of the second part for or on account of any extra work or material performed or furnished, or alleged to have been performed or furnished, under or by virtue of this contract, and not expressly bargained for and specifically included therein, unless such extra work or material shall have been expressly required in writing by the party of the first part or his successor , the prices and quantities thereof having beenfirst agreed upon by the contracting parties and approved by the Chief of Engineers.”
This provision is one of the essential terms of the agreements, and its recognition and enforcement are absolutely necessary in order to protect the right of the Chief of Engineers, by whose approval the instruments were given the force of contracts.
It is insisted by the claimant that he had performed a much larger amount of work up to the 4th and 6th of January, 1884, than is allowed him in the report of the engineer in charge. The court has carefully considered the testimony in relation to the amount of work, and finds that the estimates of the witnesses are vague and unsatisfactory. The contracts, on the question of the amount of work, stipulate as follows:
“ The decision of the engineer in charge as to quality and quantity shall be final.”
This clause of the agreements is subject to the same general principles of law applicable to the power of the engineer to declare a forfeiture, and the estimate- of the engineer is final and conclusive, unless it is impeached upon one of the two grounds stated by the Supreme Court in the case of Kihlberg, quoted above. The parties having agreed that the engineer in charge should determine the quality and quantity of the work, they are bound by his decision; and upon his estimate, unimpeached, we determine the compensation of the claimant.
Other items of claim are made which we will not notice in detail, as we regard them as not being sustained by the proof and unwarranted as a just basis for damages in this-proceeding.
The plaintiff is entitled to recover on four items of claim, as shown by the findings, aggregating the sum of $26,379; and for that amount a judgment will be entered.