Hat, Judge.
reviving the facts found to be established, delivered the opinion of the court:
This is a suit brought by the plaintiffs to recover an amount alleged to be due them on their contract with the defendants. The plaintiffs agreed with the United States to construct and complete certain canals, branches, and structures on the Minidoka project, in the State of Idaho. Work was begun under the contract in July, 1905, and was completed and accepted on December 4, 1906.
The matter in dispute is the quantity of class 2 material which the plaintiffs handled during the performance of their contract. The specifications provided for four classes of: material. Class 1 was all material which could be plowed by an average four horse or mule team, each animal weighing not less than 1,400 pounds, attached to a suitable breaking plow, all to be well handled by at least three men. For this class 1 material the contractors were to receive $0,104 for each cubic yard excavated, moved, and put in place. Class 2 was indurated material of all kinds which could not be plowed as in class 1, but which required loosening by powder and could then be removed in scrapers. Material of classes 8 and 4 do not concern the issues in this case. It was also provided that the contractors should haul all material free for a distance of not more than 200 feet, but should be paid for any overhaul in excess of that distance at a rate per hundred feet, which was fixed in the contract at $0.01.
A large portion of the canals and laterals was constructed above the natural level of the land, and it was necessary to procure material for the construction of the embankments, and this was done by borrowing earth from pits adjacent to the canals, which were known as borrow pits.
During the performance of their contract the contractors encountered indurated material which they were unable to move with four-horse plows. This material could be moved with 6, 8, and 10 horses, but did not require loosening by powder. This material was found in the borrow pits, and *175 the engineer in charge refused to allow pay for it as class 2 material, giving as his reason that according to the tests which had been provided in the specifications it could not be regarded as class 2 material. As to allowing pay for such material found in borrow pits the engineer would not agree to it, pointing out that with the price for overhaul which the contractors had submitted and the abundance of class 1 material which was available even within the limit of free haul, which was 200 feet, he did not think it right to allow him to place in the canal embankment all class 2 material which would cost 35 cents a yard, as against class 1 material which would cost on an average 10 cents a yard. With this reasoning the contractors seemed to acquiesce; certainly they did not at that time make any further complaint; nor did they appeal from the engineer’s decision. They waited until the work was almost completed and then appealed their case to the chief engineer of the Reclamation Service. In March, 1907, the claims of the contractors were referred to a board of engineers, and that board made a report upon said claims on April 5,1907. This board decided that it was the business of the engineer, according to the specifications, to define the location of the borrow pits, and that he was presumed to have done so, and that the contractors must have obeyed his directions since no complaint was made of their disobedience. This board also decided in effect that the indurated material was class 2 material, and that the contractors must be paid for all material of class 2 whether excavated from the borrow pits or from the prism of the canal. This decision was approved by the chief engineer, and the supervising engineer was instructed to make estimates in accordance with this decision. These estimates were made and forwarded to the contractors on May 14,1907. The contractors refused to accept them and appealed to the chief engineer.
In August, 1907, the chief engineer visited the Minidoka project, and after examining the borrow pits and after spending some time in making tests with pick and shovel, and finding these tests useless, he directed Mr. F. C. Horn, an engineer in the employment of the Reclamation Service, to equip a plow team, and make tests in accordance with the specifications. Mr. Horn made these tests and reported *176 thereon on September 14,1907. He found and reported that he did not find material which could justly be classified as class 2 material under the contract and specifications for this work. The contractors objected to this report, that the conditions of the soil when the Horn test was made was different from conditions existing when the contract was being performed; that there had been rainfall immediately preceding the tests, which brought about this change, and they suggested that Mr. Horn had repeatedly expressed himself as strongly against them before he had been selected to make the tests. It does not appear that they had objected to the selection of Mr. Horn before the tests were made, nor has the suggestion of unfairness on the part of the engineer been sustained by the evidence. The chief engineer, for reasons given at length in his report, overrules the other objections of the plaintiffs.
The contractors insisted that the classification made by Mr. Lance, the engineer of the surety company, should be accepted by the chief engineer. The chief engineer declined to do this on the principal ground that the tests made by Mr. Lance were made with pick and shovel, and that tests so made were wholly inadequate.
The chief engineer, after giving all parties a full hearing, decided that the estimates made and submitted on May 14, 1907, should stand, and upon that basis decided there was due to the contractors the sum of $15,550.90. This sum the contractors refused to receive and brought this suit. The specifications provided:
“ Upon all questions concerning the execution of the work, and the classification of the material, in accordance with the specifications, the decision of the engineer shall be binding on both parties.”
After a careful review and consideration of the decisions of this court and of the Supreme Court of the United States the following seems to be the well-established rule: Where there is a provision in a contract making the decision of an engineer officer or other officer final as to quality and quantity, distance to be ascertained, classification of material, or any other subject matter in the contract which may be matter of dispute and which may arise during the execution of *177 the work, the decision of the engineer or other officer will be treated as final by the courts, and will not be subject to review by them in the absence of fraud or such gross error as implies bad faith, or a failure to exercise an honest judgment in the premises. McBride Electric Co. v. United Slates, 51 C. Cls., 448, 456; Pacific Hardware Co. v. United States, 49 C. Cls., 327; McLaughlin & Co. v. United States, 37 C. Cls., 150, 188; Barlow et al. v. United States, 35 C. Cls., 514, 546; Kennedy v. United States, 24 C. Cls., 122, 139; MerrillRuckgaber Co. v. United States, 241 U. S., 387, 393; Ripley v. United States, 233 U. S., 695, 704; United States v. Barlow, 184 U. S., 123, 133; United States v. Gleason, 175 U. S., 588, 602, 607; Chicago, Santa Fe & California Railroad Co. v. Price, 138 U. S., 185, 193; Martinsburg & Potomac Railroad Co. v. March, 114 U. S., 549, 550; Sweeny v. United States, 109 U. S., 618, 620; Kihlberg v. United States, 97 U. S., 398, 401.
In Pacific Hardware Co. v. United States, supra, Campbell, chief justice, in delivering the opinion of the court, said:
“ It has been held that a provision in a contract making the decision of an engineer officer in charge final as to ‘ quality or quantity ’ of material furnished or ‘ distance to be ascertained ’ between the parties will be so treated and as not subject to review by the courts in the absence of fraud or such gross error as implies bad faith or a failure to exercise an honest judgment in the premises.”
In McLaughlin & Co. v. United States, supra, Howry, judge, delivering the opinion of the court said:
“Another rule is that it is competent for parties to a contract of the nature of the present one to make it a term that the decision of an engineer or other officer of all or specified matters of dispute that may arise during the execution of the work shall be final and conclusive, and that in the absence of fraud or of mistake so gross as to necessarily imply bad faith such decision will not be subject to the revisory power of the courts.”
In Kennedy v. United States, supra, the court said:
“At least one of three conditions must exist before the decision of the arbiter can be impeached — fraud, bad faith, or a failure to exercise an honest judgment. A mere mistaken judgment not tainted with fraud, bad faith, or dishonesty will not be sufficient to avoid the decision of the arbiter.”
*178 In. Kihlberg v. United States, supra, the court said:
“The parties, however, concurred in designating a particular person * * *, with power not simply to ascertain, but to fix, the distance which should govern in the settlement of the contractor’s accounts for transportation. The written order of General Easton to the depot quartermaster at Fort Leavenworth was an exercise of that power. He discharged a duty imposed upon him by the mutual assent of the parties. The terms by which the power was conferred and the duty imposed are clear and precise, leaving no reason for doubt as to the intention of the contracting parties. They seem to be susceptible of no other interpretation than that the action of the chief quartermaster, in the matter of distances, was intended to be conclusive. There is neither allegation nor proof of fraud or bad faith upon his part. His action can not, therefore, be subjected to the revisory power of the courts without doing violence to the plain words of the contract. Indeed, it is not at all certain that the Government would have given its assent to any contract which did not confer upon one of its officers the authority in question. If the contract had not provided distinctly, and in advance of any services performed under it, for the ascertainment of distances upon which transportation was to be paid, disputes might have constantly arisen between the contractor and the Government, resulting in vexations and expensive and to the contractor oftentimes ruinous litigation. Hence the provision we have been considering. Be this supposition as it may, it is sufficient that the parties expressly agreed that distances should be ascertained and fixed by the chief quartermaster, and in the absence of fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment, his action in the premises is conclusive upon the appellant as well as upon the Government. The contract being free from ambiguity, no exposition is allowable contrary to the express words of the instrument.”
In United States v. Gleason, above cited, it is said by the court:
“ Another rule is, that it is competent for parties to a contract of the nature of the present one to make it a term of the contract that the decision of an engineer or other officer of all or specified matters of dispute that may arise during the execution of the work shall be final and conclusive, and that in the absence of fraud, or of mistake so groas as to necessarily imply bad faith, such decision will not be subjected to the revisory powers of the courts.”
*179 And in the same case the court proceeds further to point out that it was not competent for the court to go back of the judgment of the engineer and to revise his action by the views of the court.
Again, in Ripley v. United States, supra, the court in passing upon a clause in a contract similar to the one now under consideration, after stating that there was no finding of bad faith on the part of the officer, said:
“ But the contract did not contemplate the opinion of the court should be substituted for that of the engineer.”
Quotations from the many decisions of the courts in which this subject is treated might be multiplied, but enough has been set out to establish the soundness of the rule laid down above.
In this case a term of the contract was that the decision of the engineer as to the classification of the material should be final. Bad faith is charged, but it is not proven. This court, therefore, will not undertake to go back of the judgment of the engineer and to revise his action by its own views.
The engineer having found that there is due the contractors the sum of $15,550.90, that will be the judgment of this court, and it is so ordered.
Downet, Judge; Barnet, Judge; Booth, Judge, and Campbell, Chief Justice, concur.