Downey, Judge,
delivered the opinion of the court.
Plaintiff seeks to recover two items claimed to be due it in connection with the performance of a contract dated April 22, 1919, between it and the United States for the construction of a pass, weir, beartrap, etc., at Dam No. 25 in the Ohio Diver. The facts are practically undisputed and questions presented involve the determination of the lights of the parties under certain provisions of the contract and specifications which are in the record and made a part of the finding's.
The contract provided for the completion of the work on or before December 31, 1920, and when it became apparent to the plaintiff that it would not be able to do so by the specified time it, in November, made an application for an extension of time for one year, without penalties, and also another application for allowances under section 20(b) of *445 the specifications, during the extension. The plaintiff alleged in substance unfavorable iveather and river conditions in 1919 and an unaA’oidable shortage of labor AYhich had pre-A’ented it from expediting the work. The contracting officer, reporting to the chief of engineers, indicated his belief that an extension Avas not justified on account of Aveather or river conditions, but revieAved the situation with reference to the difficulty of procuring sufficient labor and recommended ar. extension of time for 95 fair days. He also recommended that this extension should be Avithout penalties, referring in that respect no doubt, to expenses of superintendence and inspection, and that the right gHen the contractor in paragraph 20(b) of the specifications to an allowance for pumping flooded cofferdams should be extended also throughout that period.
The Chief of Engineers upon consideration of this report gave authority to Avarve the time limit for the completion of the contract for a reasonable period and to remit costs of inspection and superintendence “ under the causes enumerated in article 5 ” thereof for a period of 95 fair working days, the judgment of the district engineer as to what constitutes a fair Avorking day to goArern, and also directed that the allowance for pumping out flooded cofferdams as prescribed in paragraph 20(b) of the specifications should continue during the extra time alloAvance.
It is apparent that AA’hile the contracting officer recommended extension of the time limit specifically on account of the labor situation, the Chief of Engineers, in authorizing the extension, predicated it upon “the causes enumerated in article 5 ” of the contract.
The chief contention upon the part of the defendant is in substance that the ground upon Avhich the extension was granted was not one of those proAÚded for in article 5 and it was held by the General Accounting Office in connection Avith the consideration of these claims that it Avas the right of the office to determine whether the extension AAras for an allowable cause.
The contract in article 5 provides:
“ That no charge for inspection and superintendence shall be made for such period after the date fixed for completion *446 of this contract, as, in the judgment of the contracting officer, approved by the Chief of Engineers, shall equal the time which shall have been lost through any cause for which the United States is responsible, either in the beginning or prosecution of the work, or in the performance of extra work ordered by the contracting officer, or on account of unusual freshets, ice, rainfall, or other abnormal force or violence of the elements, or by strikes, epidemics, local or State quarantine restrictions, or other unforeseeable cause of delay arising through no fault of the contractor, and which actually prevented such contractor from delivering the material or commencing or completing the work within the period required by the contract.”
The argument is that this language authorizes an extension of time or as it is put, a waiver of the time limit, for the specified causes stated and that to the language “or other unforeseeable cause of delay arising through no fault of the contractor ” the hard and fast rule of ejusdem generis applies and that there can therefore be included within the phraseology quoted only causes of like nature to those enumerated and that therefore the labor conditions existing are not to be regarded as an authorized eaiise. In this connection we are furnished with authorities to show that these conditions are not within the proper scope of the word “ strike.”
It seems to us that the rule relied upon is being applied with entirely too much strictness, or possibly that the phraseology quoted indicates in itself that the rule is not applicable at all. It indicates the contemplation of other causes which could not be foreseen and the use of that language, particularly the word “unforeseen” in the connection used, implies a broader contemplation than would result if we were to conclude that only causes of the same substantial character as those enumerated were available.
But we do not regard it as worth while to discuss that proposition at any length nor indeed necessary to decide it, for following the quotation above from article 6, it is next provided therein that “The findings of the contracting-officer, approved by the Chief of Engineers, shall be accepted by the parties hereto as final.” The Chief of Engineers, in his action quoted above, did not in terms grant the extension *447 for the specific cause incorporated in the recommendation of the contracting officer, but he predicated hisi action rather on the general terms used in the quoted provision, broad enough to include the contracting officer’s recommendation and possibly more, but whatever the situation in that respect may have been it is the final result which is for consideration, and that was a recommendation that the time limit be waived and an authorization to that effect upon the part of the Chief of Engineers, both acting under the provisions of article 5.
We see no room for doubt that, under the circumstances, the case is in this respect within the well-established rule that the parties, having inserted in their contract this provision making of the contracting officer and the chief of engineers the final arbiters of any question in this respect, are bound by their findings in the absence of fraud, bad faith, such gross error as to imply bad faith, or a failure to exercise an honest judgment, none of which are asserted. The collection of cases in Brinck, Receiver, v. United States, 53 C. Cls. 170, so covers the field that it is only necessary to refer to that case.
This holding necessarily results in the conclusion that the plaintiff is entitled to recover the expenses of superintendence and inspection during the period of the extension which were charged against it.
But upon a different ground the conclusion must be reached that the plaintiff is not entitled to the two items of $2,500 each for pumping out the cofferdam during the period of the extension.
Paragraph 20(b) is the only provision in the contract or specifications providing for an allowance for such expense. It provides: *448 cofferdams which may occur after the date for completion of the contract.”
*447 “20(b). An allowance for cost involved will be made the contractor by the United States of two thousand five hundred dollars ($2,500) for each time that the Ohio River rises to a stage above the top of a cofferdam which has been pumped out by the contractor and in which work is actually in progress. This allowance will be made during the period allowed for the completion of the work under paragraph 15 of these specifications and will not apply to any flooding of
*448 Paragraph 15, referred to in 20(b), is as follows:
tf15. Commencement, 'prosecution, and completion. The contractor will be required to commence work under the contract within thirtj^ (30) days after the date of receipt of notification of approval of the contract by the Chief of Engineers, U. S. Army, to prosecute the said work with faithfulness and energy, and to complete it on or before December 31, 1920.”
While it is apparent that there is specific authority in article 5 of the contract to relieve the contractor from expense of inspection and superintendence which it is first provided shall be charged against him in case the time limit is waived, there is not only no.authority to obligate the Government to pay for pumping cofferdams during that period, but, if it were to be assumed that otherwise such an allowance would bjT implication follow an extension of time, it is specificalty provided in 20(b) of the specifications that that allowance will be made during the period allowed for the completion of the work under paragraph 15 of the specifications and will not apply to floodings after the date for the completion of the contract, and paragraph 15 of the specifications, referred to. requires the completion of the contract “ on or before December 31, 1920.”
It should hardly be necessary to suggest that we are not unmindful of the rule applicable in some classes of cases to the effect that an extension of time properly and seasonably granted serves to fix a new date for the completion of the contract, but this case, for the purpose here involved, is not of that class and such a construction is precluded by the terms of the contract itself.
Aside from the effect of the provisions alreadj'- referred to, there are others which add their weight. The language of 20(b) referring to the period allowed for the-completion of the work “ under paragraph 15 ” is very explicit because of that reference, but it or language of the same import is not used in this paragraph alone. In article 5 of the contract providing for relieving the contractor from charges for *449 inspection and superintendence it is provided, subject to the conditions following and already referred to, that no (.‘barge for inspection and superintendence shall be made for such period “ after the date fixed for completion of this contract,” etc. Can that language, in effect the same as that used in 20(b), refer to anything else than the date provided in the contract for the completion of the work? Could it by any possibility be construed as referring to a new date fixed by an extension ? Clearly not, for such a construction applied in this instance would result in such an apparent absurdity that its mere pointing out is all that is necessary.
But there is yet one other provision, not lengthy but forceful. In article 5 of the contract in which is found the authority to waive the time limit and relieve the contractor from' expense of inspection and superintendence and in which, if at all. is to be found the authority for such action as would result in fixing a new date for the completion of the contract, is also found, in vary pertinent connection, this provision:
“But such waiver of the time limit and remission of charges shall in no other manner affect the rights or obligations of the parties under this contract, nor be construed to prevent action under article 4 hereof,” etc.
The conclusion can not be doubtful. Aside from the other considerations, paragraph 20(b) of the specifications limits this pumping allowance to the period allowed for the completion of the work under paragraph 15 of the specifications, and article 5 of the contract provides that a waiver of the time limit shall in no other manner than as provided therein affect the rights of the parties.
The Chief of Engineers did authorize the. continuance of the pumping allowance during this extension. That was not only not a matter vested in his discretion, but it was in conflict with the terms of the contract and beyond his power to do. Upon this claim there can be no recovery.
Judgment for plaintiff in the sum of $1,806.11.
Grahaai, Judge; Hat, Judge; Booti-i, Judge; and Cawr-rRll, Chief Justice, concur.