Downei,
Judge, delivered the opinion of the court.
The plaintiff’s claim is for disallowed items growing out of the placing with it by the Secretary of the Navy of an order for the construction of three vessels known as mine sweepers and a contract entered into between the parties with reference thereto.
Plaintiff had established a shipbuilding plant in 1916, and at the time that the matters herein involved Avere the *764 subject of discussion, in the latter part of May and early part of June, 1917, it had at its plant five shipbuilding ways, four of which were occupied by commercial vessels under construction, and it had a number of contracts for the construction of commercial vessels and anticipated the use of way No. 5, then vacant, for the construction of one of these, beginning about June 18.
The Secretary of the Navy, acting under authority of the President and under the provisions of the act of March 4, 1917, subhead “Naval Emergency Fund,” 39 Stat. 1192, desired to procure the speedy construction of twenty-four mine sweepers for war purposes, and conferred, either personally or by naval officers authorized to represent him, with representatives of the plaintiff with reference to the construction of three of these vessels. Plaintiff did not desire to undertake this work and insisted that it ought to be placed with small yards not equipped for the construction of large vessels, but the Secretary, because of the importance of this building program, insisted that it should be undertaken by established yards competently equipped for the work and the plaintiff was told that it must hold its then vacant way No. 5 for the construction of these naval vessels. It asked permission to go ahead with its program for the contemplated use of this way which it was anticipated would begin about June 18, and use another way for these vessels when it should be vacated, but this plan was disapproved and its way No. 5 was held as directed.
A formal order with reference to the construction of these vessels was issued to plaintiff on June 12,1917, and this was followed by the contract, copy of which appears as an exhibit to this petition, which bears date June 13, 1917, but which it appears was executed subsequent to that date, but at a time not shown. This was a cost plus contract.
There were unanticipated delays in the furnishing of materials for these vessels by the agency of the Government to which that duty had been delegated. The first keel plates were received about September 15, but the keels of the first two of these vessels were not laid until about October 8, and until that time way No. 5 remained idle. It is because of this idle time and timé subsequently alleged to have been *765 lost by reason of delay in furnishing materials that plaintiff asserts the first item of its claim. The claim as presented was for loss of earnings “ account of tying up No. 5 shipway waiting for material for laying' of keel and construction of the boats on the ways,” 228 days at $474.82 per day amounting to $108,259.96, the 228 days being arrived at toy taking 346 days as the total elapsed time from June 18, 1917, when it is said it ivas planned to lay the keel of a- merchant vessel on way No. 5, to May 30, 1918, when the last of the three vessels was launched, and deducting therefrom 118 days as the time during ivhich it is asserted this way would have been occupied in the construction of these vessels had there been no delay in furnishing materials, and 112 days of the 228 being assigned to the period from June 18 to October 8, when the way was idle awaiting keel plates. The remaining 116 days are ascribed to delays in furnishing materials after the work had commenced. „
There was no time fixed for the completion of the vessels and during the time plaintiff’s claims here presented were pending before the compensation board provided for in the contract plaintiff, in a communication to the board, abandoned its claims on account of delays occurring after the work commenced and asserted it only as to the 112 days during which this way was idle before the keels were laid for the first two vessels on October 8. However this claim as originally asserted is now asserted here notwithstanding this abandonment.
The theory upon which this claim as to the 112 days is here asserted in brief and argument is that.the direction given to the plaintiff to hold its way No. 5 for the construction of these three naval vessels constituted a commandeering or a “taking” of that way for this preliminary period of 112 days such as entitles the plaintiff, outside of the provisions of the contract, to “ just compensation ” therefor. It is difficult to construe the petition as asserting this theory and in correspondence during the pendency of the claim with the compensation board the plaintiff did not contend that there was a commandeering of this way but that it was held open for this work pursuant to instructions and that it *766 was “ morally entitled to compensation ” just as it “ would have been legally entitled had the way been formally commandeered.”
We do not take, within proper limitations, any issue with this quoted contention and, as the situation appears to us, would be inclined to award some moderate compensation, much less, however, than plaintiff claims, for this period, if it were within our province to do so, but Ave are of the opinion that, under the circumstances, we have no poAver to consider the question on its merits.
From this statement it is not to be assumed that Ave agree Avith plaintiff’s contention iioaat made that there Avas a commandeering of this way for this period, resulting in effect in a separation of this period from the subsequent period during which the Avay was in actual use in the construction of the vessels and entitling the plaintiff to “just compensation” as for a taking. Such a contention can not be regarded as well founded.
If, proceeding under the “ NaAral Emergency Fund ” provision of the act of March 4,1917, the Secretary of the Navy had placed an order with the plaintiff for the construction of these vessels, Avith which the plaintiff, without other procedure, had complied, the provisions of the act as to just compensation would have been applicable as the proper basis of settlement, and, if the compensation fixed had been unsatisfactory, further claim might have been made in this court. But, with reference to- the construction of the vessels, the parties entered into a contract fixing the basis of compensation and granting broad powers with reference thereto to a “ compensation board ” to be created for the purpose. We need not quote here the applicable provisions of that contract which may readily be found by reference.
There is some apparent indisposition to recognize this document as a contract. It is sometimes referred to as “ order ” and it is suggested that its signing by the plaintiff was rather a formality than a necessity, but it is clearly a contract.. Plaintiff in writing the Secretary that it was “ fair and reasonable ” save in one respect, not here material, referred to it as a contract; in submitting its claim for the items here involved to the compensation board it referred *767 to it as a contract, and by that action in so submitting its claims it recognized the jursidiction of the compensation board. The apparent fact that plaintiff might have dis-, charged its obligations under the law by complying with an order for the construction of the vessels without executing a contract, which was not required by the law, can not affect its obligations under a contract which it saw fit to execute. It may have deemed it for its own advantage to accept a proffered contract prescribing a basis of compensation, but its motive is immaterial.
Additional compensation for the use of this way during the period in question was considered by the compensation board upon the presentment of a claim therefor by the plaintiff, and it was within the power of that hoard, under the contract, to have made an additional allowance therefor. Such an additional allowance might properly have been included by the board in the costs which it was authorized to ascertain if it had deemed the plaintiff entitled thereto.
We need not consider the basis of the board’s conclusion in the matter further than to suggest that, whether right or wrong, the claim was given careful consideration and there is no averment or evidence of bad faith or failure to exercise an honest judgment. Under the circumstances we can not review the finding of the board. Sufficient applicable authorities, although there are others, are cited by Judge Hay in his opinion in Brinck, Receiver, 53 C. Cls. 170.
It is averred in the petition, after reciting the disallowance by the hoard, that “ the plaintiff accordingly brings this suit in the Court of Claims, not being satisfied with the decision of said compensation board in denying plaintiff’s claim.” We find nothing in the provisions of the contract authorizing resort to this court in case of dissatisfaction with the action of the board. The contract itself, as well as the law, precludes such a contention.
What has been said is necessarily determinative of all other items of plaintiff’s claim, except the item of $1,500 retained because of plaintiff’s refusal to execute a final release. The item discussed is apparently the only one which furnishes any room for argument upon the question of the *768 jurisdiction of tbe compensation board, and our conclusion in that respect embraces them all.
The execution of a final release to entitle the plaintiff to receive the $1,500 retained but admittedly due is rendered unnecessary by this adjudication of the rights of the parties and judgment has therefore been awarded for that amount.
Hay, Judge; Booth, Judge, and Campbell, Chief Justice, concur.