HELVETIA MILK CONDENSING CO., Inc., v. UNITED STATES.

No. F–203.

Court of Claims.

April 7, 1930.

G. M. Owlett, of Wellsboro, Pa. (Crichton & Owlett, of Wellsboro, Pa., on the brief), for plaintiff.

Percy M. Cox, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GRAHAM and GREEN, Judges.

GRAHAM, Judge.

The only question in this case is involved in the counterclaim of the defendant. The right of the plaintiff to recover interest on a tax refund allowed it in the sum of $11,133.-54, certified by the Commissioner of Internal Revenue to the Comptroller General for payment on August 24, 1925, is admitted. The defendant's counterclaim for $11,117.56, with interest, grows out of a contract, dated December 2, 1918, between the plaintiff and the Army, Navy, and Marine Corps, for supplying milk, which contract is embodied in a communication from the Milk Manufacturers' War Committee to the United States Food Administration. (Finding 6.) This agreement was reached at a conference of the United States Food Administration with the manufacturers of milk on September 26, 1917, at which conference the plaintiff was present.

Under this agreement the manufacturers agreed that the profits made on sales should not be more than 42 cents per case on evaporated milk and 59 cents per case on condensed milk, calculated on the basis of Federal Trade Commission cost accounting as set forth in the pamphlet issued by the Federal Trade Commission under date of July, 1917, entitled "Uniform Contracts for Cost Accounting, Definitions, and Method." It was provided that in case "any manufacturer has made, during the period, an average of more than .42¢ per case on evaporated milk and 59¢ per case on condensed milk the excess above such margin of profit shall be refunded by the respective manufacturers to the Army, Navy, or Marine Corps, respectively. In the event a manufacturer has made less than 42¢ per case profit on evaporated, and 59¢ per case on condensed milk, neither the Army, Navy, nor Marine Corps shall be obligated to make any additional payments."

Under this arrangement the War and Navy Departments purchased from the plaintiff 34,676 cases of evaporated milk, for which they paid plaintiff the sum of $188,776.24. Subsequent to January 1, 1919, the United States Federal Trade Commission, to which the matter of investigation to determine the cost of production and profit was referred, made an audit of plaintiff's books of account. Because plaintiff's books of account showed opening and closing inventories only semiannually and not monthly, the difficulty, if not impossibility, of calculating the exact cost of production for the months of November and December, 1917, was explained to Mr. Adolph Meyer, the treasurer of plaintiff company, by the Federal Trade Commission auditor sent to make an audit of the accounts. Mr. Meyer suggested as being fair and sufficiently accurate (and this was agreed to on behalf of plaintiff) that the cost of production for November and December be calculated by the auditor on the basis of applying to such months the average monthly cost for the six months' period ended December 31, 1917. This method was adopted by the auditor. By such method of calculation, it was ascertained and found that plaintiff had been paid by the War and Navy Departments on account of purchases of evaporated milk during the term of said price agreement the sum of $11,117.56 in excess of the profits allowable under said agreement. Demand was made upon the plaintiff by the United States to refund the excess profits so determined and found by the United States Federal Trade Commission to have been paid, but the plaintiff refused and failed to refund the sum.

By said agreement the question of cost of production was to be determined by the United States Federal Trade Commission, and, as just stated, this investigation was made and the balance last stated was found to be due the defendant. The contract provided a forum in the Trade Commission to determine the question of cost. The Trade Commission determined it. There is no question raised here of fraud, gross mistake, or dishonesty in reaching its conclusion, and it is therefore binding upon this court. Whether or not the commission made a mistake of judgment is not a matter for our consideration. Where an umpire has been provided with power to decide a question, this court will not undertake to review that finding except in the face of some showing of fraud, accident, or mistake so unconscionable and gross as to raise an implication of fraud. Penn Bridge Co. v. United States, 59 Ct. Cl. 892, 897; Brinck v. United States, 53 Ct. Cl. 170, and cases cited therein; also Kennedy

v. United States, 24 Ct. Cl. 122, and particularly the case of Cheyenne Milling Co. v. United States, 59 Ct. Cl. 927.

The defendant, therefore, under the findings is entitled to recover the difference between the sum of $15,564.56 due defendant and $11,133.54, the amount of plaintiff's claim, or $4,431.02, plus interest on last named sum, amounting to $886.20, from August 24, 1925, to January 1, 1929, making a total due the United States of $5,317.22, as claimed by defendant. Let judgment be entered for defendant in this sum.

BOOTH, Chief Justice, and GREEN, Judge, concur.

WILLIAMS and LITTLETON, Judges, did not hear this case and took no part in its decision.