Hat, Judge,
delivered the opinion of the court:
The facts are very fully set out in the findings, and it is not necessary to recapitulate them here.
As to the claim of the plaintiff for the sum of $17,438.64 and 10 per cent thereof as profits, we do not think the plaintiff can recover in the face of the release which it executed on July 9, 1921, wherein it agreed to discharge the Government from any and all claims and demands whatsoever that it had or may have under or by virtue of its contract with the Government. The claims which make up the sum •of $17,438.64 were never asserted prior to the filing of the petition in this court; they were never brought to the attention of the department, and they were, not reserved or mentioned at the time of the release above referred to, which was nearly two years after the contract had been completed.
Chief Justice Campbell, speaking for the court in the case of Poole Engineering Co. v. United States, 57 C. Cls. 232, 234, says:
“When a contract has b:en performed and a stipulated consideration has been paid, the general presumption is that the transaction is a closed one. If there be claims on the part of the Government which should limit the amount of a stipulated payment necessary to close the transaction, they are asserted and, generally speaking,'are deducted if they are known at the time. If there are claims on the part of the contractor which affect the amount due and payable to him under the terms of the contract, or for an alleged breach of it, they should be asserted at or before the time a settlement is made. The Government is entitled to know, *709 when it makes what it believes to be a final payment on its contract, what claims a contractor intends to assert against it on account of the contract. It is its right to know whether the supposed final payment is in fact final and conclusive. It should not be required to wait for this information until such time as it may .suit the convenience of the other party to bring his suit in the Court of Claims. If suit can be brought in two years, or even in less time, it may be brought in six years, the period prescribed by the statute of limitations. In the meantime the Government’s witnesses may become .scattered or have failed to keep records they otherwise would preserve and its means of defense destroyed or greatly impaired. The doctrine implied in the plaintiff’s theory of this case is that no settlement which the authorized agents of the Government having the contract in charge may make is final or conclusive on the contractor if he has kept silent about a claim for unliquidated damages growing out of what he conceives to be a breach of the contract. It ha.s been frequently said that if a party keeps silent when he ought to speak he will not be heard thereafter to speak when he ought to remain silent.”
This reasoning is particularly applicable to the case at bar.
The first nine items of this claim are of such a character that they might have been claimed under paragraph 18 of the general provisions of the contract. This paragraph reads as follows:
“Extras. — The contract price shall cover all expenses, of whatever nature or description, connected with the work to be done under the contract. Should the contractor at any time consider that he is being required to furnish any material or labor not called for by the contract, a written itemized claim for compensation therefor must be submitted by him to the officer in charge, who will refer the same at once with full report and recommendation to the Nav.y Department, Bureau of Yards and Docks, for decision and formal order covering approved items, if any. The failure or neglect of the contractor to present as above his claim for material or labor alleged to be extra within 60 days after being required to furnish or perform the same shall be deemed and construed as a waiver of all claim and right to additional compensation for the furnishing or performance of the alleged extra material or labor, and the contractor agrees to accept the finding and action of the Navy Department, Bureau of Yards and Docks, in the premises as conclusive and binding.”
*710 The plaintiff failed to comply with this provision of the contract, and by so doing Avaived its rights, if it had any, and. can not now be heard to complain of its own negligence. The' other two items of this claim come under paragraph 17 of the general provisions of the contract and can not be allowed, as the plaintiff accepted, in full satisfaction, the sum of $2,123.47 as compensation for the change covered by these last two items.
We come now to consider the claim of the plaintiff for $13,560 liquidated damages which have been charged to it and deducted by the Government from the contract price.
The plaintiff alleges that the Government made certain misrepresentations relative to the accessibility by railroad and road of the reservation whereon the contract work was to be performed, and that by reason of these misrepresentations it was delaj^ed in the performance of the work 97 days, and that the Bureau of Yards and Docks illegally refused to grant this extension of time.
The specification upon which the plaintiff,-relies to show this alleged misrepresentation is found in Finding IY. The statement that the reservation “ may be reached bjr the Baltimore & Ohio Railroad” is absolutely true; there is no misrepresentation about it and it will not bear the construction placed upon it by the plaintiff that the Government guaranteed that the railroad company would operate its road in such manner as to allow the plaintiff to haul its supplies over the road and into the reservation. Moreover, the president of the plaintiff company before submitting its proposal went upon the site of the work, saw the railroad tracks and the spur, and chose to assume that they could be used for its purposes. He made no inquiry of the railroad company or of any of its officers, something which a man of ordinary business prudence would have done, and signed the contract without ascertaining, as he could have done, the conditions under which his company would have to proceed with the work of getting its materials to the site. The Government concealed nothing, said nothing which was not true, and did not in any way deceive the: plaintiff. The cases cited 'by plaintiff’s counsel to uphold this contention are not in point.
*711 The same reasoning applies to the alleged misrepresenta-' tion as to water. Upon the drawings appeared the statement, “Water to this point by D. C.” This statement was a true statement, and there was nothing in the contract to justify the inference of the plaintiff that the Government would extend the water system to the reservation or that it in any way controlled the use of the water. The plaintiff made no inquiry about it, either of the officers of the District of Columbia or of the Bureau of Yards and Docks, before it made its proposal or signed the contract.
When the plaintiff made its proposal the specifications provided that the contractor could employ labor in excess of eight hours per day in view of the emergency conditions then existing. When the proposal of the plaintiff was accepted the plaintiff was notified by telegram that this paragraph was canceled and that paragraph 23 of the general provisions of the contract “ shall apply to the work to be done under this contract.” The contract itself contained a provision canceling the provision in the specifications providing that labor could be employed in excess of eight hours per day. The plaintiff, knowing this, signed the contract. It now says that it protested against signing the contract, but finally did sign it because it feared the forfeiture of the $10,000 check which it had placed in the hands of the Government in accordance with the provisions of the specifications. The specifications, paragraph 199, provided that each proposal should be accompanied by a certified check payable to the Chief of the Bureau of Yards and Docks for the sum of $10,000 as a guaranty that the bidder would not, without cause approved by the Chief of the Bureau of Yards and Docks, withdraw his bid. The plaintiff, after being fully informed of the fact that the contract contained a clause which changed the specifications, elected to sign it and chose not to exercise its right to withdraw its bid. Certainly, if its present assertions are true with respect to what it has suffered by reason of this change in the contract, it had good cause to withdraw its bid; but, not having done so, it can hot now be heard to complain.
Moreover the contract provided that “extensions of time for the completion of the work may be allowed,” and the *712 plaintiff agreed “to accept the finding and action of the Navy Department, Bureau of Yards and Docks, in the premises as conclusive and binding.” The Bureau of Yards and Docks acted upon the requests of the plaintiff for extension of time and allowed some extensions of time and disallowed others. This decision of the Bureau of Yards and Docks must be treated as final by this court, and we can not review it unless there has been fraud or such gross error as to imply bad faith or that there has been a failure to exercise an honest judgment in the premises. Brinck v. United States, 53 C. Cls. 170, 176, 177. It does not appear from the evidence in this case that there ivas any fraud, or that the action of the Bureau of Yards and Docks was based on such gross error as would imply bad faith, or that there was any failure to exercise an honest judgment in arriving at the decision in this case.
The petition of the plaintiff will be dismissed as to all the items of its petition except the item of $271.20, for which a judgment will be entered.
Geai-iam, Judge; DowNev, Judge; Booth, Judge; and Campbell, Chief Justice, concur.