Hat, Judge,
delivered the opinion of the court:
This is a suit brought by the plaintiff to recover from the United States the sum of $51,622.85. This sum is made up of three items, as follows: $23,923.18, which was the cost to the plaintiff of repairing four blowouts in the cofferdam; $26,619.64, which was an alleged further cost caused to it by the said blowouts; and $1,080.03, which was withheld from it by the Navy Department. All of these items arose *130 out of the contracts of the plaintiff of November 4, 1918, and June 30, 1919, with the United States for the construction of a ramp and marine railway at the Philadelphia Navy Yard. The contracts, together with the specifications and provisions which are a part of the contracts, are made a part of the findings of fact.
The plaintiff alleges that its losses for which it is suing arose out of four blowouts of the cofferdam, which it alleges would not have occurred had it not been for the fact that the plaintiff was misled by statements made in the specifications as to the conditions at the site of the work, such as underwater contour lines, the height of the river bottom, and the nature and quality of the soil under the water. The plaintiff contends that it- planned the construction of the cofferdam to meet the conditions set out in the specifications, and insists that if the correct conditions had been as set out in the specifications the blowouts would not have occurred, and it would have suffered no loss, and there would have been no delay in the completion of the work under the terms of the contract. As the work progressed, some of the conditions described in the specifications turned out to be different from those so described. The questions therefore are whether the United! States is liable by reason of the statements made in the specifications, and can the plaintiff recover against the United States for the loss sustained by it, either on account of the representations made or because the actual conditions at the site of the work were different from those set out in the specifications. The pertinent specifications are as follows:
“ Drawings accompanying specifications. — The following drawings accompany this specification and will form a part of the contract. Said drawings are the property of the Government and shall not be used for any purpose other than that contemplated by this specification.
Bureau Serial No. Slieet No. of Showing
79284 1 Platform and ramp.
79285 2 Sections and details.
79286 3 Piers and boathouse.
# $ $ ‡
“ Buried construction. — Such information as the Government possesses regarding sewers, pipes, and other construe *131 tion beneath the surface of the ground on the site of the work may be obtained from the officer in charge. The Government does not guarantee the information given to be correct or that other buried construction will not be encountered, and does not assume any risk or responsibility in connection therewith. Intending bidders will have the privilege of examining the site, and they should satisfy themselves as to existing conditions.
* * # * * * *
“ Contours. — Elevations of the ground in the vicinity of the work are indicated on drawing. These elevations are referred to the yard datum. Although the elevations indicate approximately the conditions that are likely to be found there, intending bidders will have the privilege of examining the site of the work and shall satisfy themselves as to actual elevations.
“ Examination of site. — Intending bidders are expected to examine the site of the proposed work and inform themselves thoroughly of the actual conditions and requirements before submitting proposals.”
From a reading of these specifications it will be seen that the United States made no specific representation as to conditions at the site of the work, except that it was stated on the maps or plans which were a part of the specifications what the elevation of mean high tide was; and also extreme high-tide elevation was given. These facts are set out in Finding XII; and in Finding IX will be found the facts as to soil of the river bottom. It will be observed that these specifications placed upon the plaintiff the responsibility of making an examination for itself. It did make an examination, but it chose to rely upon the information given it by the Government. It would not have been a difficult task for the plaintiff to have ascertained for itself the character of the soil under the water, and no representation was made to the plaintiff by the defendant as to what that character was; and as to the other conditions they were as plain to the plaintiff as they were to the defendant. The United States or its representatives did not conceal any knowledge which they had from the plaintiff; the statements made were true so far as they knew; they had no knowledge of any dredging operations which had taken place 25 years before this work was undertaken, and they did not speak with certainty as *132 to the conditions at the site of the work, but left upon the plaintiff the responsibility of ascertaining and determining the conditions for itself. There was no misrepresentation by the United States, and that being so the plaintiff can not recover for the loss which it has incurred. The plaintiff took upon itself the responsibility of constructing a cofferdam suitable for the work. If its construction was faulty or if it was constructed in a manner which did not meet the conditions of the work, then the plaintiff must bear the losses resulting from its faulty construction. The main trouble seems to have been the character of the soil under the water, and as to this no representation was made to the plaintiff. We are therefore of opinion that the plaintiff is not entitled to recover the first two items of its claim.
The item of $1,080.03 has been withheld from the plaintiff without authority of law and the plaintiff is entitled to recover it. McClintic-Marshall Co. case, 59 C. Cls. 817; Geo. F. Pending & Co. case, 60 C. Cls. 699.
Graham, Judge; Downey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.